## WENDELL *vs.* SAFFORD, EX'X.

The court will not set aside a verdict, as against the evidence in a cause, merely because they might, upon an examination of the evidence, have arrived at a result different from that found by the jury.

Nor will they set it aside upon this ground, where the credibility of witnesses is to be considered, presumptions are to be raised, and inferences to be made, and where the nature of the evidence is such, that different persons might reasonably have different impressions concerning it.

But where it is apparent that the jury must have misunderstood, or totally disregarded the instructions of the court upon the evidence, or must have neglected properly to consider the facts, and must have overlooked prominent and essential points in the evidence, so that substantial justice has not been done, the verdict will be set aside.

ASSUMPSIT against the defendant, as executrix of the will of Thomas Safford, upon an account annexed to the writ.

The action was referred to an auditor, whose report disclosed the following facts, the only question before him being, whether the demand, to recover which the action was brought, was exhibited to the executrix within two years from the date of her appointment.

The testator died in the month of August, 1834 ; and it appeared from the testimony of the plaintiff that he never presented the account to the executrix, but presented it to the testator before his death ; and that on the 18th day of April, 1835, he paid the executrix fifty dollars upon a note which he owed the testator, and at that time conversed with her about the account.

There was some evidence from Thomas Safford, a son of the testator, from which it might be inferred that the plaintiff's account was among the papers of his father.

It also appeared from the testimony of the plaintiff, that when he paid Mrs. Safford the above mentioned sum of $50·00, he said to her, " the account which I rendered to your husband we will settle some other time," to which she replied, " very well."

Thomas Safford testified, that five or six months before

the suit was commenced, he called on the plaintiff to have the account settled between him and his father's estate—that the plaintiff said he had some charges against the estate, but was not ready to settle, as he had not got his account made out—that he called again on the plaintiff, two or three days before the suit was commenced, when the plaintiff did not know how the balance stood, nor what were the items in his account—that he did not recollect seeing the account among his father's papers, nor did he have the principal charge of them.

The executrix testified that she did not find the account among her husband's papers—that she knew that her husband and the plaintiff had an account, but did not know that it was unsettled, until she found an account against the plaintiff in her husband's books, not marked *paid*—that when her son went to settle with the plaintiff, it was to settle the accounts between him and the estate, and that she did not know how the balance stood at the time.

It appeared that the whole business of settling the estate was intrusted by the executrix to one John N. Nutter, who testified that the testator, shortly before his decease, showed him an account of the plaintiff against the testator, but he could not say whether it was on the testator's books, or on a bill; and that he saw the account, either on the book or on a bill, two or three days after the death of the testator. Nutter called on the plaintiff for a settlement, but the plaintiff postponed the matter upon some excuse which he gave, and did not inform Nutter of the amount of the account. He also testified that while he had charge of the settlement of the affairs of the estate, and until the final settlement thereof in the court of probate, he was never informed by any person that the estate was indebted to the plaintiff on account.

Upon this evidence the court instructed the jury, that if the account of the plaintiff was delivered to the testator before his death, and was seen among his papers by the ex-

Wendell *v.* Safford.

ecutrix, these facts, with the conversation stated by the plaintiff to have taken place between himself and the executrix, would constitute a sufficient presentment of the demand. Or, if the account were found by Nutter, the agent of the executrix, among the papers of the deceased, drawn off upon a bill, this would be a sufficient presentment.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside, alleging it to be against the evidence in the case.

*Emery,* for the plaintiff.

*Hackett,* for the defendant.

GILCHRIST, J. It is unnecessary to determine whether the instructions of the court in this case were correct. The plaintiff does not except to them, for they were favorable to his views of the law ; and as the verdict is for the defendant, there is no occasion for him to take any exception.

Nor is it necessary to settle whether an exhibition of a demand should be such as to give the executor or administrator notice of the amount of the claim, and of the character of the charges contained therein ; because the evidence relates solely to the question whether the plaintiff has exhibited *any* claim, of *any* character, to the defendant or her agent.

The evidence, on either side, is shortly this : The plaintiff testifies that he said to Mrs. Safford, " the account which I rendered to your husband, we will settle some other time" ; to which she answered, " very well." Thomas Safford says, that when he went to settle with the plaintiff, he told him that there was some oil charged in his account, which was then produced, not charged on the account among his father's papers. But the same witness says that he did not recollect seeing the account among his father's papers. Mrs. Safford says that she did not find the account among her husband's

papers—that she found an account *against the plaintiff*, on her husband's books—that her son went to settle the accounts between the plaintiff and the estate, and that she did not know how the balance stood.

Upon the point, then, whether the account was seen by the executrix, there are various matters in the evidence to be weighed by the jury ; for all the evidence is certainly not against the defendant. The plaintiff is a creditor, seeking to enforce his claim by his own testimony, and the credibility of his statement is to be weighed. Mrs. Safford and her son have an interest adverse to that of the plaintiff ; and where these persons contradict each other, it is a question for the jury which of them they will believe. Is it necessarily to be inferred, from the remark of Mrs. Safford to the plaintiff, that she had ever seen his account ? She did nothing more than assent to the plaintiff's proposition to postpone the settlement. She might, perhaps, have learned from her husband that the plaintiff had presented his account to him, but it does not follow that she had seen it, or knew any thing more than that he professed to have a demand. It is evidence to be submitted to a jury, from which they may or may not infer that she had seen the account ; but it is a question of probabilities, and there is not distinct proof of the fact.

The same remarks are applicable to the evidence on the point, whether Nutter had seen the account. He says that the testator showed him an account of the plaintiff against him ; but whether it was on the testator's books, or upon a separate bill, he could not say, and the same account he saw shortly after the death of the testator. The jury might have believed that he merely saw on the testator's books certain items carried to the credit of the plaintiff. If this were their belief, they were correct in their finding ; for that would be no exhibition of a demand, nor was it so contended at the trial. The matter is to be determined upon a balancing of probabilities ; and, although those may be in favor of the

Wendell *v.* Safford.

plaintiff, the case is not so strong for him as to leave no room for the existence of a rational doubt.

These remarks upon the evidence are made in order that we may apply to the case the rules of law applicable to the motion made by the plaintiff. We entertain no doubt that wherever the principles of the common law prevail, unmodified by statute, the courts of law possess the power, and it is often their duty, for the purposes of justice, to set aside a verdict where it is decidedly against the weight of the evidence. The practice has existed more than two hundred years in England, and was a necessary consequence of the disuse of the writ of *attaint*, which experience had proved to be a remedy only in name. This writ, which at common law lay only upon writs of *assize*, was for the purpose of enquiring whether the jury of twelve men had given a false verdict; and this question was tried by a jury of twenty-four, who were called the grand jury, and who were to try the question of the false verdict upon the same evidence given to the petit jury. If the verdict were found to be false, the judgment by the common law was, that the petit jurors should lose their *liberam legem* and become forever infamous; should forfeit their goods and the profits of their lands; should themselves be imprisoned, and their wives and children thrown out of doors; should have their houses razed, their trees extirpated, and their meadows ploughed; and that the plaintiff should be restored to all that he had lost by reason of the unjust verdict. A law so terribly severe could not be executed, and by subsequent statutes, made perpetual by 13 *Eliz. c.* 25, the punishment was diminished to perpetual infamy, and a pecuniary fine. 3 *Bl. Comm.* 404. And this act remained unrepealed until the passage of the important act of the 6 *Geo.* iv., *c.* 50, for consolidating and amending the laws relating to jurors and juries, by which the remedy by attaint was abolished. But, barbarous as the sentence was, even in its mitigated form, it proves clearly that even in those early times some mode of correcting the mistake or

improper conduct of juries was acknowledged to be necessary. The remedy was an imperfect one, at best; and it fell into disuse, not because there was not occasion enough for some remedy, but because of the cumbrous character of the one devised, and the undistinguishing severity of the punishment. So entirely obsolete had it become for many years, that few if any instances of an attaint are to be found in the books subsequent to the case of *Brook* vs. *Montague, Cro. Jac.* 90, which was decided in the year 1606.

In *Slade's Case, Style* 138, 24 *Car.* I., (1648) the practice of setting aside verdicts as against the evidence is said by the court to have existed in the common pleas, although Rolle, C. J., seemed to think that in the king's bench the only remedy was by attaint. But in *Wood* vs. *Gunston, Style* 466, decided in the year 1655 in the upper bench, in the time of the Commonwealth, a verdict for the plaintiff was set aside on this ground; and Glynn, C. J., said it was frequent in the books for the court to take notice of the miscarriage of juries, and to grant new trials on them; and the reason why the matter cannot be traced farther back, is said to be, that the old report books do not give any account of the determinations made by the court upon motions. Numerous cases in which verdicts have been set aside in the English courts for this reason, are to be found in the English reports extending from the time of Style to the period of the adoption of our constitution, and thence to the present day. The case of *The State* vs. *Rollins,* 8 *N. H. Rep.* 550, settles that the body of the common law was continued in force by the constitution of New-Hampshire, so far as it was applicable to our institutions and the circumstances of the country, until altered or repealed by the legislature. That the exercise of this power is sometimes absolutely necessary for the purposes of justice, it needs but little argument to demonstrate. If the verdict of a jury be in all cases conclusive, there is now no remedy for a fraudulent and wilful disregard of the evidence; and the trial by jury, instead of being the

Wendell v. Safford.

safest and most expeditious mode of determining questions of fact, would soon lose that place in the public confidence to which it is now so justly entitled. The courts could not introduce the writ of attaint, which was as obsolete, at the time of the act abolishing it, as was the trial by *battel*, which it succeeded. Indeed, of these obsolete remedies, we are as much authorized to introduce the latter as the former, for they are equally inconsistent with our institutions. That equal and impartial justice which it is the object of all laws to attain, could not be dispensed if this mode did not exist, of rectifying the mistake of a jury, in a proper case for the exercise of this power. " The court," said Tindal, C. J., in the case of *Mellin* vs. *Taylor*, 3 *Bingh. N. C.* 109, " ought to exercise, not merely a cautious, but a strict and sure judgment, before they send the case to a second jury. The general rule, under such circumstances, is, that the verdict, once found, shall stand; the setting it aside is the exception, and ought to be an exception of rare and almost singular occurrence." And it is creditable to the general intelligence of juries that there are few verdicts which, on the whole, may not be supported upon a rational view of the evidence. The object of a trial by jury is to ascertain the existence of certain alleged facts. Where it is apparent that there has not been such an investigation of the evidence as the merits of the case require, the great object of all judicial tribunals— the discovery of truth—is not attained. If, in such case, there be no remedy, then the forms of law are made subservient to the purposes of injustice; and it is the only case under our institutions where the evil once committed cannot be remedied. If the court, like all other human tribunals, commit an error, it can generally be remedied to some extent, either by a revision of an erroneous opinion, or by legislative interposition. But the jury cannot reverse a former verdict, unless, by the interposition of the court, the case can be again submitted to them. The legislature cannot grant a new trial, for that is an exercise of judicial power. Unless,

therefore, it be assumed, as universally true, that the verdict of a jury is always right, or that it is better to consider it always conclusive, at whatever expense of justice, however partial or corrupt may have been the motives of the jury, however gross may have been the mistake which even they may be the most desirous of correcting, the power to interfere, that justice may be done, is necessary for the protection of the rights of all. The enquiry made by the court is, whether a fair and intelligent examination of the facts has been made. The court do not assume to find any fact, but merely inquire whether it is expedient and consistent with the purposes of justice that the evidence should be submitted to another jury. *Davis* vs. *Jenney*, 1 *Met.* 221. "A general verdict can only be set right by a new trial, which is no more than having the cause more deliberately considered by another jury, where there is a reasonable doubt, or perhaps a certainty, that justice has not been done. The reasons must be collected from the whole evidence, and from the nature of the case considered under all its circumstances." *Per Lord Mansfield, Bright* vs. *Eynon*, 1 *Burrow* 390.

But in the examination of this point, courts proceed with such a degree of caution as not to interfere with the proper duties of a jury. Where the verdict is decidedly against the weight of evidence, so that it is apparent that the jury must have misunderstood or totally disregarded the instructions of the court thereon, or must have neglected to consider the facts, and overlooked prominent and essential points in the evidence, where it is such a verdict that twelve honest and intelligent men would not have returned it, it is the duty of the court to set it aside. *Jackson* vs. *Loomis*, 12 *Wend.* 27; *Rundell* vs. *Butler*, 10 *Wend.* 119; *Hammond* vs. *Wadhams*, 5 *Mass.* 353; *Baker* vs. *Briggs*, 8 *Pick.* 122; *Bryant* vs. *Com. Ins. Co.*, 13 *Pick.* 549; *Davis* vs. *Jenney*, 1 *Met.* 221. But where presumptions are to be raised, and inferences drawn, and evidence is to be weighed, the verdict will not be set aside, although the court might have decided

the other way upon the facts.  *Cunningham* vs. *Mason*, 18
*Pick.* 13 ; *Douglas* vs. *Tousey*, 2 *Wend.* 352 ; *Coffin* vs.
*Phœnix Ins. Co.*, 15 *Pick.* 291 ; *Wait* vs. *McNeil*, 7 *Mass.*
261 ; *Hammond* vs. *Wadhams*, 5 *Mass.* 353 ; *Bright* vs.
*Eynon*, 1 *Burrow* 390 ; *Jackson* vs. *Loomis*, 12 *Wend.* 27 ;
*Fowler* vs. *Etna Fire Ins. Co.*, 7 *Wend.* 270 ; *Hikley & a.* vs.
*Kellogg & a.*, 8 *Cowen* 223 ; *Lewis* vs. *Payn*, 4 *Wend.* 423.

We have adverted to the authorities, and stated the law
on this subject at greater length than would have been ex-
pedient, if any decision upon the matter were to be found in
the published decisions of this court, although verdicts have
been set aside by the courts in this state, because they were
against the evidence.

We have intimated, in the course of these remarks, our
opinion upon the motion submitted by the plaintiff.  The
case is one which does not require the interference of the
court, acting upon the safe and cautious principle which the
authorities and the reason of the matter recommend.  We
might have taken a different view of the evidence, from that
which was impressed upon the jury.  But that consideration
is not sufficient, where the credibility of witnesses is to be
considered, presumptions are to be made, and inferences to
be drawn, in relation to all which men might reasonably differ.

*Judgment on the verdict.*