## LISBON *v.* BATH.

Since the statute of June 28th, 1827, taxes for the support of the ministry must be voted, assessed, and collected with the same formality and strictness as those assessed for other specific purposes. The vote of a town to raise money

to defray town charges, will not authorize the assessment of a tax to be appropriated for the support of the ministry.

For a pauper to gain a settlement under the eighth mode prescribed by the act of December 16th, 1828, and the tenth mode prescribed by the Revised Statutes, ch. 65, § 1, requiring that all taxes legally assessed shall be paid, it must be shown that the whole tax was actually paid.

Where a pauper was assessed the sum of three dollars and three cents, and it appeared that the collector of taxes received of the pauper three dollars in full payment of the tax, and so agreed with the pauper: *Held*, that the rights of the town could not be affected by such an agreement; that the *whole* tax was not paid, and that no settlement was gained.

The Court will not interfere to set aside a verdict as against evidence, unless *fully satisfied* that it was procured by corruption or by manifest mistake in the consideration and application of the evidence, and that substantial justice has not been done.

ASSUMPSIT, for supplies furnished to one Clough, a pauper, alleged to have his settlement in Bath.

The only question in dispute was, whether the tax of 1831, alleged to have been assessed by the defendants upon Clough that year, was legally assessed and paid. The State, county, school and town tax amounted to $3.03, and no exception was taken to the legality of that assessment. There was also assessed upon Clough for that year, the sum of fifty-one cents, for the support of the ministry in Bath, making the whole tax to be $3.54.

In 1805, the town, at a legal meeting, voted to settle the Rev. Mr. Southerland in the ministry, and a contract was duly made and ratified between the parties in pursuance of said vote. Mr. Southerland preached in Bath, and received his salary therefor according to the contract, till after 1831, and a tax was annually assessed upon the inhabitants of the town to pay the salary. In 1831 the town voted to raise money to pay the State, county, and school taxes, and to defray town charges, but no article was inserted in the warrant for that year to raise any sum for the support of the ministry, or to pay Mr. Southerland, nor was any sum voted that year for that purpose. The plaintiffs contended that since the statute of 1827, it was necessary for the town to vote to raise money for the support of the ministry, otherwise a tax for that purpose would be illegal. The

Lisbon v. Bath.

court, sustaining those views, ruled that the fifty-one cents were illegally assessed, and therefore it did not devolve upon the plaintiffs to show that sum paid. To which ruling the defendants excepted. To show the $3.03 paid, the plaintiffs called a witness who testified that he was present when the collector called upon Clough for his tax; that the collector told Clough he had not his list with him, but that his tax did not vary more than two or three cents from three dollars either way ; that Clough thereupon paid him three .dollars, and he received it for the tax without claiming any more. The defendants excepted to the competency of this evidence to show a payment of the tax, but the court admitted it. The defendants then introduced the collector himself, who testified that he made no agreement td receive the three dollars in payment, and produced the tax-list of that year. The tax of Clough did not appear to be crossed out, the three dollars being credited. No more than the three dollars were paid into the town treasury by the collector on account of this tax.

The court instructed the jury that if they found from the evidence that the collector received the three dollars in full payment of the tax, and so stated to, and agreed with, Clough, they would return a verdict for the plaintiffs, otherwise for the defendants. The jury found a verdict for the plaintiffs, and the defendants moved to set the same aside, and for a new trial, for supposed error in the rulings of the court and the instructions given to the jury, and because the verdict was against evidence. These several questions were reserved for the decision of this Court.

*H. A. & W. J. Bellows,* for the plaintiffs.

1. The powers of selectmen in regard to the assessment of taxes, are specified by law of July 7th, 1827, § 11, (see ed. 1829, page 557,) which is, in substance, a reënactment of the law of February 8th, 1791. They are, by this law, authorized to assess, among other things, all such sums of money as shall be legally voted to be raised at a meeting of the inhabitants of their town duly holden, or that they may be authorized to assess

by any law of this State. Beyond this the selectmen have no power. Previous to July 1st, 1819, towns had a general power to raise money to support the ministry, but since then it is confined to cases where there was a subsisting contract with a settled minister, and then did not extend to the taxing of persons of a different religious persuasion. The power of the town, as it existed at the. time of the assessment of this tax, was derived from the law of June 28th, 1827, § 15, (ed. of N. H. Laws 1829, page 457,) which is a substantial reënactment of the law of July 1st, 1819. This provides that towns, in cases like this, may from *time to time* vote, assess, collect, and appropriate, &c. In this case there was no vote at any time to raise this money, and so the case finds. In fact, it appeared that all the money voted that year was assessed in another form, as town taxes, &c.

2. Upon the second point made by the defendants' counsel, the case finds that the collector called on Clough without the tax-bill and told him that the tax did not vary more ·than two or three cents from three dollars either way, and Clough paid him the three dollars, and the collector received it for the tax without claiming any more. And the question is, whether this tends to prove that the three dollars were received in full for the tax. It was not necessary to show an agreement in so many words, that it should be payment in full. It is enough that the jury might find that it was paid and received as the whole, and the trifling difference proved to exist rendered such a conclusion very probable, the ministry tax not having been regarded as obligatory on Clough to pay. In fact, it was competent for the jury, on this testimony, to have found that the parties considered it uncertain whether it was less or more than three dollars, and were to take that risk, and the collector to gain or lose, as it might turn out. In coming to this conclusion the jury would take into consideration the lapse of time, the fact that no demand of the three cents was afterwards made, that the town of Bath had supported Clough as having gained a settlement, together with the testimony of Clough that he had paid the tax.

3. Nor is the verdict against evidence. Independent of the testimony of the collector, the circumstances above alluded to

in connection with the testimony of Darius Clough, afford a strong inference that such was the understanding. And the testimony of the collector, taking into consideration the extreme improbability of his having any memory touching *one* among many hundred taxes after such a lapse of time, is entitled to very little weight. Especially as it was involved in contradictions and absurdities that made it open to observation to the jury and very much weakening its force.

4. It was a substantial payment of the tax. It stands upon ground at least as favorable as the case where the parties could not make exact change. And if these are liable to be overhauled and balances recovered, a door would be opened for law-suits innumerable. In this case the exact amount was not known to the parties, but it was supposed to be two or three cents more or less than three dollars, and that sum was to be paid; and if more, the collector had the benefit of it, and if less, he was to lose it. And in strictness it was a good accord and satisfaction, the consideration being as good as that of payment *before* the day, of a lesser sum. The agreement to accept the three dollars in satisfaction was sufficient to authorize the jury to find the whole paid. *Blanchard* v. *Noyes*, 3 N. H. Rep. 518; *Stafford* v. *Bacon*, 2 Hill, 353; 25 Wend. 384.

*C. R. Morrison*, for the defendants.

1. The statute of 1827 has no such operation as the plaintiffs contend.

2. The evidence does not tend to show an agreement to receive the three dollars in full payment of the tax.

3. If it can be considered that some of the testimony has such tendency, yet upon all the proof, the verdict is against evidence. 4 N. H. Rep. 314; 12 Ib. 171.

4. An agreement of the collector to receive the three dollars in full payment of a larger sum was of no validity, and cannot operate as a payment of the whole tax. Aside from the ministry tax, the balance was large enough to be paid in the legal currency of the State. The Court can no more disregard this sum, sufficiently large to be thus paid, than it can disregard the whole. It is mani-

fest, that *all* the tax was not paid as the law requires. The balance might have been collected, notwithstanding such supposed agreement. If it might have been collected, it surely was not paid. *Blanchard* v. *Noyes*, 3 N. H. Rep. 518 ; 1 Met. 276 ; 5 East, 230 ; *Jaffrey* v. *Cornish*, 10 N. H. Rep. 505, and cases there cited ; *Shrewsbury* v. *Salem*, 19 Pick. 389 ; *Robbins* v. *Townsend*, 20 Pick. 345 ; *Burton* v. *Wakefield*, 4 N. H. Rep. 47 ; *Huse* v. *Merriam*, 2 Greenl. Rep. 375 ; *Boyden* v. *Moore*, 5 Mass. 370. Our principal point is, that the agreement to take the three dollars in payment is not sufficient. A deduction from the amount, however small, cannot be allowed. This was an agreement with the collector, one to which the town was not a party, and not binding upon the town. The collector had no power to make any such contract.

*Mr. Bellows,* in reply. The collector took the three dollars in payment, and that is sufficient. The three dollars was a substantial payment of the tax. The three cents is only a trifle and not to be regarded. Gold and silver coin alone are made a legal tender. The smallest silver coin is the smallest legal one. This was a matter between the collector and the tax-payer ; and the payment being made, that is sufficient. The pauper has some rights. He has paid what was received as his tax and must gain a settlement.

*Mr. Morrison.* No rule of equity can apply in cases of settlement between towns.

EASTMAN, J. Two questions arise in this case. The first is, whether the sum assessed against Clough, the pauper, for the support of the ministry, being fifty-one cents, was legally assessed or not ; and the second, whether the balance of the tax, being three dollars and three cents, was paid. The whole tax assessed against Clough in the year 1831 was three dollars and fifty-four cents. Three dollars only have been actually paid, and in order to charge the town of Bath with the settlement of Clough, it must appear that the ministry tax was illegally assessed — and

therefore need not be satisfied — and that the balance of the tax against Clough was so paid as to answer the requirements of the law.

By the statute of June 28th, 1827, § 15, it is enacted, " that towns, between which and any settled minister there was, prior to and on the first day of July, 1819, a subsisting contract, shall have a right, from time to time, to vote, assess, collect, and appropriate such sum or sums of money as may be necessary for the fulfilment of such contract, *provided* that no person shall be liable to taxation, for the purpose of fulfilling any contract between any town and a settled minister, who may have heretofore filed, or shall file, previous to such assessment, with the town-clerk of the town where he may reside, a certificate declaring himself not to be of the religious persuasion or opinion of the minister settled in said town." This statute is the one in force at the time of the assessment of the tax in controversy. It is substantially the same as § 5, chap. 31 of the Revised Statutes, and was a reënactment of the law of July 1st, 1819. And since that time taxes for the support of the ministry under the circumstances stated in the several acts, must be voted, assessed, and collected in the same manner as those for other purposes. In no other way, except by voluntary action and agreement, can the ministry be supported. It does not appear that Clough filed any dissenting certificate that year, and therefore would be held liable to pay a tax for the support of the ministry under the contract with Mr. Southerland, if any tax was legally assessed upon him for that purpose. The case finds that " in 1831 the town voted to raise money to pay the State, county, and school taxes, and to defray town charges, but no article was inserted in the warrant for that year to raise any sum for the support of the ministry or to pay said Southerland, nor was any sum voted that year for that purpose." It is clear, therefore, that no tax was legally assessed upon Clough that year for the support of the ministry, unless it be decided to have been included under the vote to raise money to defray town charges. And we think it cannot be so included. The power of taxation is one of the highest elements of sovereignty.

27 *

It cannot be enforced upon the citizen unless by clear and distinct provisions of law. And most especially should the law, be explicit, when the money to be raised is to be applied for matters affecting the religious views and consciences of men. Hence, whenever money is to be raised by taxation, the specific purpose for which it is required must not only be inserted in a legal warrant, but must be voted at a legal meeting of the town, and be assessed and collected in a legal way. And hence also it was, that the act of 1819 and the subsequent acts were passed. From the formation of the government to the present time it has always been held legal for towns to raise money to defray town charges; and those charges have been, and are, generally well understood as applicable to the ordinary and incidental expenses of the town. But, if under that head money could be legally raised for the support of the ministry or the fulfilment of any contract with a clergyman, the necessity of any acts for that purpose would not have existed. Or if there was any practice of the towns indirectly to raise money for the support of the ministry, the passage of those acts indicated clearly the intention of the Legislature and provided against the repetition of what might be considered oppressive, and an infringement upon the rights of conscience. If we should hold, that the raising of money to defray town charges would authorize the assessment of a tax to support the ministry, it would be opening the door for the exercise of great latitude of construction on the part of town authorities, and cause the assessment of taxes for expenditures never contemplated by the citizens of the towns. It would also virtually abrogate the acts of 1819 and 1827. On this point, therefore, we think the ruling of the court below was correct, and that it did not devolve upon the plaintiffs to show this tax paid, inasmuch as it was assessed without any vote for that purpose, and was illegal.

There being no controversy between the parties as to the legality of the *assessment* of the remaining part of the tax, we come to the consideration of the question, whether that has been so paid as to answer the requirements of the statute. The eighth mode of gaining a settlement in a town, as pointed out by the

statute of December 16, 1828, § 1, (N. H. Laws, p. 301,) is as follows: "Any person of the age of twenty-one years who shall hereafter reside in any town in this state, and being taxed for his poll for the term of seven years in succession, shall pay all taxes legally assessed on his poll and estate during the said term, shall be an inhabitant of such town." This is a transcript of a similar provision in the Act of January 1, 1796, and the same is substantially the law at the present day. Rev. Stat. ch. 65, § 1.

We infer from the case that the tax for six years was legally assessed, and paid; and the settlement of this pauper must therefore depend upon the decision of the question whether the sum of three dollars and three cents was paid, there being no dispute as to the assessment, and the words of the act being "*shall pay* all taxes legally assessed." And this question is still further narrowed by the fact, that the sum of three dollars was actually paid, leaving only the very small item of three cents, that did not come into the treasury of the town.

Statutes regulating and fixing the settlement of paupers have always been construed with much strictness; for although the principle upon which one town rather than another has been required to render assistance to a pauper, has been upon the assumption that he has contributed to sustain the burdens of the town, or has rendered some service for its benefit; yet in many, if not most cases, the taxes levied upon him, or the services performed, or the benefits rendered have been but a mere fraction when compared with the amount required to be expended for his relief. In some instances, where the settlement is a derivative one, the ancestor may have been among the most substantial and wealthy inhabitants of the town, and contributed largely in defraying its taxes and relieving its burdens. In such cases, it is not only legal but equitable, that the town should afford relief when required. But, in by far the greater number of instances the fact is quite otherwise. The consideration that has been paid is generally so small in proportion to the amount required for relief, that although the pauper may acquire some claim and establish between the town and himself some equities that should be regarded, yet, as between contesting towns, the obligations

Lisbon *v.* Bath.

raised by the pauper are so small, that courts have paid but very little if any attention to any supposed equities between them. It is by the provisions of statutes alone that paupers are supported. We have no common law authority upon the subject. And where a remedy is given by statute only, that statute must be strictly followed in order to receive its benefits; and hence the statutes upon this subject have been construed with a strictness not surpassed upon any other civil subject. The statute of 8 & 9 William III. ch. 30, enacts that "no hired servant shall gain a settlement unless such person shall continue and abide in *the same service during the space of one whole year.*" In *Rex* v. *Kingswinniford*, 4 Term Rep. 219, which was a case decided under this statute, the facts were these : A servant covenanted to work with his master for seven years, and that he would not at any time during the term depart from or leave the work and service aforesaid without the leave or license of the master, but would continue and be in such service as aforesaid from six o'clock in the morning till seven in the evening of each day during the said term (Sunday excepted), and it appeared that he worked during the hours specified and occasionally in the night-time, and often went on errands for his master on Sundays, and never worked for anybody else, nor thought himself at liberty to do so : *held*, that this was not such a service as would gain the pauper a settlement, because it appeared that he was to be his own master on Sundays and on the other days after seven o'clock in the evening. In *Rex* v. *Inhabitants of Ober*, 1 East, 599, it was held that a pensioner, hiring himself as a servant for a year with a reservation to himself of two days in each half year, when he might go for his pension, could not gain a settlement by service under such contract; that there was a reservation of four days, and therefore not a whole year's service. Held also, that a reservation of *Sundays* was sufficient to prevent the gaining of a settlement. And in *Rex* v. *Inhabitants of Rushulme*, 10 East, 325, it was decided that no settlement could be gained by serving under a contract for *four* years with liberty for the servant to leave a week every year to see his friends; that there was in such case no one year's service. By the Revised

Laws of New Jersey, p. 35, § 1, it is enacted that "every person who shall serve an apprenticeship under an indenture shall obtain a legal settlement in the township in which such apprentice shall serve with his or her master or mistress for the space of one full year." In *Jefferson* v. *Pequanach*, 1 Green's Rep. 187, it was held under this act, that an apprentice who had been under indenture for more than a year to his master in the township of Jefferson, but who had been in the habit of running away at times, although his *residence* with his master might amount to a year or more, it did not amount to *service* for a year. "Subjection to indenture," say the court, "without *service*, does not fulfil the words nor the design of the statute." To gain the settlement there must be a full year of *service*. To the same effect, that statutes regulating and fixing the settlement of paupers are construed strictly, we may cite further; 4 Term Rep. 100 ; 5 Term Rep. 21 ; *King* v. *Whittlebury*, 6 Term Rep. 464 ; *Rex* v. *Ramsgate*, 6 Barn. & Cress. 712 ; *Rex* v. *Ashby-de-la-Hay*, 2 Mann. & Ry. 21 ; *Rex* v. *Pakefield*, 6 Nev. & Mann. 16 ; *Trenton* v. *Nottingham*, Cox's (N. J.) Rep. 289 ; *Stillwater* v. *Green*, 4 Halstead's (N. J.) Rep. 59 ; *Amenia* v. *Stamford*, 6 Johns. 92 ; *Sherburne* v. *Norwich*, 16 Johns. 188. Many other cases might be cited sustaining the same position.

It has been said in argument, that gold and silver alone are made a legal tender ; that the smallest silver coin is the smallest legal one ; and that the "three cents" is only a trifle, and not to be regarded. This may be true in part, but not wholly so. The Constitution of the United States, art. 1, § 10, provides, that no state shall make any thing but gold and silver coin a tender in payment of debts. This was no doubt intended to avoid fluctuations in the currency ; to prevent paper from taking the place of specie ; and to fix a permanent and certain standard of value. And whenever a tender is to be made, it may be necessary that it be done in gold or silver. The question whether cents can be regarded a legal tender for the payment of sums above the small silver coins was considered in South Carolina in 1820, in a case where a tender of several dollars was made in cents. It was there held by three out of the five members of the court, that

nothing but gold and silver is a legal tender under the Constitution of the United States. One member of the court dissented from the opinion; and the other concurred, with the qualification that he was not prepared to say that Congress might not make copper a tender. *McClarin* v. *Nesbit*, 2 Nott & McCord, 519. The late Mr. Justice *Cowen* of New York says, "Cents are not, and never have been a legal tender, except by implication, for sums under the lowest denomination of silver coin." Cowen's Treatise, vol. ii. 3d edit. p. 250, note. If, according to this view, we are to regard it as law, that a tender may be made in cents for sums between a half-dime and dime, then here was a sum, small indeed, but for which an exact legal tender might have been made. Tenders in specie are not often necessary, bank-notes being generally quite as acceptable; but when they are so, an excess of two or three odd cents, between a half-dime and dime, above the sum due, would very seldom be regarded by any one having occasion to make the tender. But even should we hold that cents cannot under any state of facts be a legal tender, it does not therefore follow, that copper is not money and that cents are not lawful coins; since, by the laws of the United States, copper is coined into cents and those cents are issued into circulation. The act of Congress establishing a mint and regulating the coins of the United States, passed April 2, 1792, provides among other things, that there shall be from time to time struck and coined at the said mint, coins of gold, silver, and *copper;* eagles, half-eagles, &c. and *cents.* And by the act passed May 8, 1792, entitled "An act to provide for a copper coinage," the director of the mint was authorized to purchase and *coin* into *cents* and half-cents, *one hundred and fifty tons of copper,* to be paid into the treasury, and thence issued into circulation. From that time forward, acts have been passed and cents coined as the convenience of business has required. The last act was passed January 8th, 1837, and provided for the purchase of copper, the exchanging of copper coins, &c. By our Revised Statutes, ch. 190, § 1, it is enacted, that "all judgments shall be rendered in dollars and *cents.*" If it is to be understood that the smallest silver coin is the smallest legal one, and as a neces-

sary consequence that odd cents cannot be collected, then the act should have been, that all judgments shall be rendered in dollars, dimes, and half-dimes. But we cannot hold the smallest silver coin to be the smallest legal one. We cannot regard cents as illegal coins. The effect of such a decision would be to compel a debtor to pay more than he owed or a creditor to take less, in every instance where the exact sum due was between a half-dime and dime. The sum to be paid or lost would be very small. But can it be regarded a trifle ? Let us take a few instances and see the effect which such a decision would have. Take the case of a creditor bringing a suit to recover an account. An off-set is perhaps filed, and a balance of three cents only is found to be due to the plaintiff. If this sum can be disregarded then the defendant must have judgment. And yet, such is the only course oftentimes left to bring about a settlement of accounts where obstinacy is the ruling passion. The instance of tax-lists is a still stronger case. A very large proportion of taxes assessed against individuals exhibits odd cents between a half-dime and dime. Should all these be disregarded and the collector receive only the even dimes or half-dimes, relinquishing to the tax-payers the odd cents, it would be found that the amount collected would probably fall short of the amount assessed by several dollars. Or if the tax-payers should exceed the amount taxed by paying a half-dime in every instance of odd cents, then would a larger sum be collected than was assessed. The jurisdiction of our justices of the peace is confined in civil cases to $13.33. If the three odd cents are to be disregarded, the creditor must pay either $13.30 or $13.35, and the jurisdiction is necessarily changed in the same way. But we will not multiply instances. The maxim *de minimis non curat lex* is very uncertain, and no general rule can be found defining its limits. It is said to be a a correct maxim, and no doubt is so. But, we apprehend the instances where it may properly be applied are rare. In *Boyden* v. *Moore, Adm'x.*, 5 Mass. 365, the defendant brought into court, under the rule, forty-one cents less than the amount intended. It was a mistake in the computation of interest. *Held,* that where a party brings money into court, the whole amount must

be brought in, as the defendant cannot withhold from the plaintiff *any* amount due, however small the sum, and although such as most men would disregard. In this case it is also said, that "fractions, not to be expressed in the legal money of account, are trifles, and may be rejected. But if any sum large enough to be discharged in the current coin of the country is a trifle, which, although due, the jury are not obliged by law to award to the plaintiff, the creditor, it will be difficult to draw a line and say how large a sum must be, not to be a trifle. The law gives no rule." It appears to us, that, under the laws of Congress, by whose authority money is coined, it cannot be doubted that "legal money of account" may be expressed in cents ; neither can it be, that cents are "current coin" of the country. In *Huse* v. *Merriam et al.* 2 Greenl. Rep. 375, Chief Justice *Mellen* says, "the maxim, *de minimis non curat lex,* is so vague as to form a 'very uncertain ground of proceeding or judging ; and it may be almost as difficult to apply it as a rule in *pecuniary* concerns, as to the *interest* which a *witness* has in the event of a cause ; and in such a case it cannot apply. *Any* interest excludes him." Inasmuch, then, as the only remedy which these plaintiffs have in this case is one given them by statute, and that statute, like all others regulating and fixing the settlement of paupers, must be construed strictly ; inasmuch as we regard cents to be current coin of the country established by the laws of Congress and recognized by our own laws, we can see no way in which this sum, small as it is, can be disregarded ; the maxim *de minimis* does not apply, and therefore it devolves upon the plaintiffs to show the "three cents" paid.

Under the instructions given them by the court, the jury have found that the collector received the three dollars in full payment of the tax, and so agreed with Clough. As a matter of business between individuals, this would be a good accord and satisfaction. It is perfectly competent for a person to take a less sum than what is actually due, and discharge his claim if he thinks proper so to do. And upon a plea of payment the acceptance of a less sum in satisfaction may be left to a jury as evidence that the rest has been paid. *Blanchard* v. *Noyes,* 3 N. H. Rep.

518; *Stafford* v. *Bacon*, 1 Hill's Rep. 533. But the rights of third parties cannot be prejudiced thereby; and upon the authorities for the settlement of paupers this transaction between the collector and pauper cannot be regarded as a payment affecting the rights of these towns. By the Stat. of 6 Geo. IV. ch. 57, § 2, it is provided that a settlement may be gained by renting a tenement in a parish and actually paying the rent for the term of one whole year at least. Under this statute it was held, that where a pauper paid part of the rent, and the overseers of the poor of a parish furnished him with money to pay the balance, and he paid it, that although the rent was paid, yet it was not such a payment as would gain the pauper a settlement. *Rex* v. *St. Sepulchre*, 1 Barn. & Adol. 924. In New York, under the statute by which a person gained a settlement in a town by residing there and being charged with, and paying taxes in, such town for two years, a pauper was taxed ten cents only in 1810, and paid it. In 1811 he was taxed forty-eight cents. This sum was also paid; but it appeared that it was done by the collector without any request of the pauper. *Held*, that as between contesting towns the payment was insufficient, and no settlement was gained by the pauper. *Walkill* v. *Mamakating*, 14 Johns. 87. In *Peru* v. *Turner*, 1 Fairf. Rep. 185, it is said, that overseers of the poor have no authority, by their mere acts and declarations, to change the settlement of a pauper from one town to another. In Massachusetts, one mode of gaining a settlement is by a residence of ten years and the payment of all taxes duly assessed for five out of the ten years of such residence. A pauper resided in a town during the ten years, paid all his taxes for four years and a part of them for the fifth, and the town, at a legal meeting, voted to discharge him from the payment of the balance. It was held that no settlement was gained in the town; that the taxes must be actually paid. *Shrewsbury* v. *Salem*, 19 Pick. 389. So, in *Robbins* v. *Townsend*, 20 Pick. 345, it is said that the fact that the pauper paid his taxes in 1821, '22, '23, and '25, raises no legal presumption in favor of payment in 1824; that the jury must judge from all the evidence whether the tax has been paid. In this case it is also said that if a pauper have pro-

perty and the town neglect to collect the tax, it will not have the operation of payment and give a settlement. To the same effect is *Attleborough* v. *Middleborough*, 10 Pick. 378. And to these authorities may be added a strong case in our own reports, that of *Jaffrey* v. *Cornish*, 10 N. H. Rep. 505. In that case it was decided, that for a pauper to gain a settlement in the eighth mode prescribed by the act of December 16th, 1828, which is the same as that now under consideration, it must be shown that the tax was actually paid. And that a negotiable promissory note, payable to a town for the amount of a tax, will not be a payment of the tax so as to give the maker a settlement in the town, even if the selectmen agree to receive it in payment of the tax. From these various authorities the deduction is very clear, that nothing short of actual payment of the whole tax by the pauper himself or by his request, will satisfy the requisitions of the statute. And if, as is laid down in these authorities, a pauper cannot be funished with money to defray a portion of his tax; if a collector cannot pay the small sum of forty-eight cents for a pauper, without his request; if overseers of the poor cannot by their acts and declarations change the settlement of a pauper; if selectmen cannot agree to take a promissory note in payment of the tax; if a town itself cannot at a legal meeting vote to receive a part of the tax in discharge of the whole; then surely a collector of taxes can make no agreement by which the rights of towns can be changed. He is the mere agent of the town for the collection of the taxes, and has no authority to remit them or to make any agreement extending beyond his special agency. If he can agree to take three cents less than the assessed tax, then may he also reduce the payment double or treble that sum. In fact we can, in principle, discover no place where he shall be required to stop; but must either hold that a collector may discharge a tax entirely by any agreement which he sees fit to make, or else hold that this tax was not paid. By taking proper security a town might have a remedy over upon the collector for any losses sustained by reason of his agreements, but this would be but a poor recompense for the change in the settlement of paupers which would be caused by his acts. Arriving then at the conclusion that the legal part of the tax which was

assessed upon Clough for the year 1831 was not fully paid, the plaintiffs fail to make out the second point in their case.

In commencing this opinion we observed, that the case presented two questions. We ought, perhaps, to have stated the number to be three, as three were raised by the defendants' counsel in the exceptions furnished by him. Having, however, decided the second question in the defendants' favor, upon which decision the merits of the case have been determined, it is unnecessary to do any thing more than simply make a passing allusion to the third point; which is, that the verdict is against evidence. Whatever the practice may be in other jurisdictions—and we are aware that it is not uniform—the law is too well settled in this State to be considered an open question. We do not interfere with the verdict of a jury to set it aside as against evidence, unless we are well satisfied that it has been procured through corruption, or manifest mistake in the consideration and application of the evidence, and that substantial justice has not been done. The *sufficiency* of evidence is for the consideration of the jury alone; and in our opinion, whenever a court undertakes to set aside a verdict because it appears to them to be against the weight of evidence and because they would, if the matter had been submitted to their consideration, have arrived at a different result, the great barrier between the powers of the court and the rights of the jury is broken down, and parties are, in effect, tried by the court and not by the jury. This subject was quite fully considered in *Wendell* v. *Safford*, 12 N. H. Rep. 171.

The testimony of the collector in this case, taken in connection with the appearance of the tax-list, would seem to be quite strong evidence tending to show the facts to be as testified to by him; and yet, the jury may, from various circumstances, have totally disregarded his statements. For the Court to say that the collector should be credited and that Clough should not be, would be to assume the prerogative of the jury; which we should not do. And if the only question reserved were, whether we would set aside the verdict because it appeared to us to be against evidence, we should not hesitate to decide it in the negative. The conclusion, however, to which we have arrived upon the second point, settles the case for the defendants.     *Verdict set aside.*