Rockingham
No. 7600

JUDITH FAUST, PAMELA DAY
AND ELIZABETH PETTIFORD

v.

GENERAL MOTORS CORPORATION
AND YUDY'S TIRE

August 29, 1977

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover and *James H. Schulte* and *Graper & Swanson,* of Portsmouth (*Mr. Schulte* orally), for the plaintiffs.

*Devine, Millimet, Stahl & Branch,* of Manchester and *Matthias J. Reynolds* and *Donald E. Shely* (of Michigan) (*Mr. Reynolds* and *Mr. Shely* orally), for General Motors Corporation.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester and *Robert L. Chiesa* (*Mr. Chiesa* and *Mr. Philip G. Peters* orally), for Yudy's Tire.

KENISON, C.J. This is a personal injuries case arising out of an automobile accident which occurred on January 13, 1970, in Portsmouth, New Hampshire. The plaintiffs sued the defendants in negligence and strict liability in tort. The trial resulted in verdicts for all defendants on all counts. On June 20, 1975, *Douglas,*

J., set aside as against the weight of the evidence the verdicts for General Motors Corporation and Yudy's Tire. Judgment on the verdicts was granted for defendant Leighton Chevrolet, Inc., which is not a party to this appeal. On October 22, 1975, the trial court clarified its June 20 order and added additional grounds for setting aside the verdicts in favor of General Motors and Yudy's Tire. All exceptions were reserved and transferred to this court.

The automobile involved in this case was a used 1965 Corvair purchased approximately a year and a half before the accident from Leighton Chevrolet in York, Maine. On December 1, 1969, Miss Pettiford purchased two retreaded snow tires from Gallagher's Tire Center in Portsmouth. Gallagher's had purchased the tires from the defendant Yudy's Tire, a Portland retreader.

There was evidence that the tires leaked air and that Miss Pettiford had to get replacements for them, which replacements also had leakage problems. She continually had to have someone fill the tires, but she testified that she was never told and never knew how much air was required. Notwithstanding this problem, Miss Pettiford continued to drive the car on a regular basis.

On the day of the accident, Miss Pettiford picked up Miss Faust and Miss Day. They stopped at a gas station to put air in the tires, but none of the plaintiffs could recall whether air was actually put into the tires at that time. The plaintiffs then drove to Ladd's Restaurant and Lounge where they drank and talked from approximately 4:30 to 6:00 p.m. During that time the plaintiffs had at least two drinks apiece. Miss Pettiford testified that she had two or three bourbon and waters.

They left the bar shortly before 6 p.m. so that one of the plaintiffs could get ready for a date she had that night. There was some evidence that the parties thought "it was getting late" and were in a hurry to get home. Dusk had settled and Miss Pettiford turned on the car's lights. She was not wearing glasses although she was required by law to do so. The car proceeded across a bridge and up a hill. At the top of the hill the car began to sway and pick up speed. It continued to do so around two curves and then on to a straightaway. There the car suddenly veered to the right on to the shoulder of the road which was lined by a cemetery wall and a row of trees, and then the car swept across the road to the left side where it collided with a stone wall. All the plaintiffs suffered substantial injuries.

The car was stored outdoors for several months at Leighton's Chevrolet until October 1970 when it was moved to a nearby barn and placed in the cellar. It remained there until at least June 1973. In June 1970, counsel for plaintiffs shipped out the tires for a series of tests. Several different tests and inspections were made by all the parties relative to the brakes and the car's braking system. The experts differed as to whether the brakes were defective at the time of the accident.

The first issue involves the limitations upon the trial court's discretion to set aside the verdict as against the weight of the evidence. F. James, Jr., Civil Procedure § 7.20, at 313 (1965). The rules governing this problem in the various jurisdictions range from giving the trial court "genuine and well-nigh unfettered discretion" to making the test for a new trial nearly identical to the directed verdict standard. *Id.* at 313–14. The standard for setting aside a verdict as against the weight of the evidence was first articulated in *Wendell v. Safford,* 12 N.H. 171 (1841), in which this court stated: "Where the verdict is decidedly against the weight of evidence, so that it is apparent that the jury must have misunderstood or totally disregarded the instructions of the court thereon, or must have neglected to consider the facts, and overlooked prominent and essential points in the evidence, where it is such a verdict that twelve honest and intelligent men would not have returned it, it is the duty of the court to set it aside. But where presumptions are to be raised, and inferences drawn, and evidence is to be weighed, the verdict will not be set aside, although the court might have decided the other way upon the facts." *Id.* at 178–79 (citations omitted).

Since that early case this court has varied the language of the rule somewhat. *Compare Wendell v. Safford supra with Lisbon v. Bath,* 21 N.H. 319, 335 (1850) [*and*] *Lawrence v. Towle,* 59 N.H. 28, 30 (1879) [*and*] *Doody v. Railroad,* 77 N.H. 161, 163, 89 A. 487, 489 (1914) [*and*] *Bennett v. Larose,* 82 N.H. 443, 448, 136 A. 254, 257 (1926) [*and*] *Wisutskie v. Malouin,* 88 N.H. 242, 186 A. 769 (1936). "This power [to set aside the verdict], in truth, is and should be very sparingly exercised by courts of law, because, not only is the jury the proper and lawful tribunal to determine questions of fact, but cases will rarely come to them so clear as to admit of no serious question." *Clark v. Society,* 45 N.H. 331, 334 (1864).

In this century two cases, *Bennett v. Larose,* 82 N.H. 443, 136 A. 254 (1926) and *Wisutskie v. Malouin,* 88 N.H. 242, 186 A. 769

(1936), have thoroughly addressed the issue of setting aside a verdict as against the weight of the evidence. As we recently stated, "[t]he standard for review of a verdict as against the weight of the evidence is extremely narrow . . . and is well stated in *Bennett v. Larose*, 82 N.H. 443, 448, 136 A. 254, 257 (1926). 'It presents for this court only the determination of the issue . . . whether the evidence in favor of the plaintiff is of such overwhelming weight that everyone must find in her favor, and nothing but mistake, partiality, or corruption could account for the verdict and its supporting finding." *Hauser v. Calawa*, 116 N.H. 676, 677, 366 A.2d 489, 491 (1976); *see Underhill v. Baker*, 115 N.H. 469, 343 A.2d 643 (1975); *Bothwick v. LaBelle*, 115 N.H. 279, 339 A.2d 29 (1975); *see Amabello v. Colonial Motors, Inc.*, 117 N.H. 556, 374 A.2d 1182 (1977).

The *Bennett* case was carefully analyzed in *Wisutskie*. Emerging from the discussion was a substantively similar but differently phrased rule. The *Wisutskie* court, quoting from *Lawrence v. Towle*, 59 N.H. 28, 30 (1879), stated " 'A verdict will not be set aside as being against the weight of the evidence, unless the preponderance was so great as to make it apparent that the jury were misled, or failed to consider intelligently the evidence laid before them.' With the qualification that it must appear clearly and definitely that the jury did not act properly in its consideration of the evidence, this statement is regarded as accurately marking out the trial court's duty in passing upon the issue." *Wisutskie v. Malouin*, 88 N.H. at 246, 186 A. at 771. That case also correctly pointed out that "mistake" and "contrary to the weight of evidence" are actually separate and independent grounds for setting aside a verdict.

In its clarification order, the trial court relied on a dissenting opinion in *Lind v. Schenley Industries, Inc.*, 278 F.2d 79 (3d Cir. 1960), which states in part as follows: "[t]he judge may not substitute the verdict he would have rendered on the evidence for that actually rendered by the jury. *But he may avoid what in his professionally trained and experienced judgment is an unjust verdict by vacating it and causing the matter to be tried again by a second jury.*" (Emphasis added.) Regardless whether the *Bennett* rule or the *Wisutskie* rule is the better statement of our law, it is clear that the emphasized portion of the above dissenting opinion upon which the trial court in part relied is not the law of this state.

■■ According to the court's June 22, 1975 order, the verdicts indicated that 'the jury fell into plain mistake and/or error." The trial, which lasted five weeks, produced twenty-four volumes of transcripts and numerous exhibits. A substantial amount of evidence exists in support of each party. There is no general current of evidence that flows to one side or another. Conflicts in the testimony are sharp and plentiful, and in such cases the trial court should be even more reluctant to substitute his judgment for that of the jury. 11 C. Wright & A. Miller, Federal Practice and Procedure § 2806, at 44 (1973). The jurors deliberated over the course of three days. They apparently rejected the testimony of the plaintiffs and their experts and instead were persuaded by the exonerating testimony of the defendants' expert witnesses. Their decision is reasonable. After reviewing the pertinent parts of the record ourselves, we are unable to discern any basis for concluding that the verdict was against the weight of the evidence or that the jury fell into "plain mistake and/or error." *Wisutskie v. Malouin,* 88 N.H. at 246, 186 A. at 771. Thus, unlike some other cases, *e.g., Hayes v. States,* 109 N.H. 353, 252 A.2d 431 (1969); *Eichel v. Payeur,* 107 N.H. 194, 219 A.2d 287 (1966); *Perreault v. Lyons,* 99 N.H. 169, 106 A.2d 380 (1954), we cannot sustain the trial court's decision on this ground.

■ In his October 22, 1975 order the trial court judge stated that he was "shocked and 'surprised'" by the verdicts and intimated that he would have reached a different conclusion himself. These reasons are insufficient to set aside the verdict. *Eichel v. Payeur,* 107 N.H. 194, 219 A.2d 287 (1966); *Doody v. Railroad,* 77 N.H. 161, 89 A. 487 (1914); *Lucier v. LaRose,* 66 N.H. 141, 20 A. 249 (1889); *Clark v. Society,* 45 N.H. 331 (1864). As the First Circuit Court of Appeals stated in a personal injuries product liability case:

> Under our jury system, reasonably disputable issues of fact are to be resolved by the jury, and if a case is properly submitted to the jury's determination, the losing party is not entitled as a matter of right to have a second chance upon a new trial before a different jury, even though the evidence submitted would have warranted the opposite verdict, and even though the trial judge, had he been sitting without a jury, might have found the facts the other way. This is so even in the case of a verdict for

a defendant corporation in a personal injury case. *Peterman v. Indian Motorcycle Co.*, 216 F.2d 289, 292–93 (1st Cir. 1954).

■ The other grounds asserted by the trial court also do not support its decision. The court's opinion incorporates "point B" of the plaintiff Faust's law memorandum in support of her motion to set the verdict aside. The thrust of "point B" is that, under *Ingerson v. Railway*, 79 N.H. 154, 106 A. 488 (1919), the court should not have submitted to the jury the issue of the plaintiff Faust's contributory negligence in riding with a driver who had just finished two or three drinks, because there was only a scintilla of evidence on the question of whether the driver was intoxicated. In *Ingerson* the jury returned a verdict for the plaintiff administratrix, who alleged that the defendant railroad improperly ejected her drunken husband from a moving train, thereby causing his death. The court noted that only two facts appeared from the evidence—that Ingerson was found dead on the defendant's right of way and that he had been drunk the preceding afternoon. "All else is left by the evidence to doubt and conjecture." *Ingerson v. Railway*, 79 N.H. at 156, 106 A. at 489. That case clearly involved no more than a scintilla of evidence, which is generally insufficient to satisfy the burden of producing evidence. C. McCormick, The Law of Evidence § 338, at 789 (2d ed. 1972).

■ Here Miss Pettiford admitted having two or three bourbon and waters within less than an hour and a half. She expressed her opinion that three drinks in an hour would probably not affect her but that four might. She also could not remember whether she had had any breakfast or lunch on the day of the accident which took place at about 6 p.m. The other plaintiffs also admitted having two drinks apiece within the same time span. The phrase "scintilla of evidence" is "a metaphorical expression to describe a very insignificant or trifling item or particle of evidence." Black's Law Dictionary 1513 (4th ed. 1951). The evidence in this case rises above that level and thus *Ingerson* does not apply. The defendants were entitled to have the jury consider whether the consumption of alcohol bore any causal relationship to the occurrence of the accident. *See Chalmers v. Harris Motors, Inc.*, 104 N.H. 111, 179 A.2d 447 (1962).

■ As a final ground for setting aside the verdict, the trial court suggested that the jury may have been misled by the charge.

"The general purpose of the trial court's charge to the jury is to state and explain to them in clear and intelligible language the rules of law applicable to the issues of fact upon which their verdict is to be based. The test of the adequacy of the charge is whether it fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Poulin v. Provost*, 114 N.H. 263, 264, 319 A.2d 296, 297 (1974) (citations omitted). In cases in which the verdict has been set aside because the jury may have been misled, the charge has been defective in that it either contained an incorrect statement of law, *e.g., Remillard v. New England Tel. Co.*, 115 N.H. 702, 349 A.2d 588 (1975); *West v. Railroad*, 81 N.H. 522, 530–33, 129 A. 768, 772–73 (1925), or omitted an instruction on some essential element of the case. *E.g., Davis v. State*, 94 N.H. 321, 52 A.2d 793 (1947).

■ In this case no specific error, omission or even ambiguity is alleged. The trial court predicated its decision upon the possibility that the jurors did not fully comprehend the distinction between negligence and strict liability in tort, that the principle of negligence pervaded their deliberations and that they did not understand the operation of the defense of contributory negligence. The court also noted that "[t]his was the first civil case for the jury that term."

The charge lasting two hours was not unusually long or complicated. The jurors received their instructions on Thursday, May 22, 1975, and deliberated for only two hours that day. They went home and returned Friday, presumably fresh, and deliberated for almost ten hours. On Monday, they reconvened for an hour and a half and returned their verdicts in favor of all three defendants. No "dynamite charge" was requested or given. At no time during the deliberations did the jury ask any questions of the court. A polling of the jury confirmed that the verdict had been unanimous. The fact that the jury deliberated and returned a verdict without requesting any clarification of the charge is a strong indication that they were not confused. Indeed, when asked whether the jury had anything to discuss with the judge after the verdicts were rendered, the foreman stated: "There was no particular questions or anything . . . . There was no specific questions that I know of." Under the circumstances of this case, it is purely speculative to assert several months after the verdicts have been returned that the jury was misled by the charge.

For the foregoing reasons the verdicts should not have been set aside.

*Defendants' exceptions sustained;*
*judgment on the verdicts.*

BOIS and DOUGLAS, JJ., did not sit; the others concurred.