Rockingham
No. 7651

ANTHONY F. DeFILLIPO & a.

v.

VINCENT M. TESTA & a.

September 30, 1977

*Perkins, Holland, Donovan & Beckett,* of Exeter (*Mr. William H. M. Beckett* orally), for plaintiffs Anthony F. and Viola J. De-Fillipo.

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover, and *Michael P. Thornton* (*Mr. Thornton* orally), for defendants Vincent M. Testa and Dominic Radocckia.

LAMPRON, J.   Action by plaintiffs against defendants Vincent M. Testa and Dominic Radocckia individually and d.b.a. Modular Building Components, Inc. Plaintiffs sought to recover an initial deposit of $5,000, and $40,000 subsequently paid, toward the purchase of certain land in Exeter and four town houses to be built thereon. At the beginning of the trial before a Master (*Leonard C. Hardwick,* Esq.), plaintiffs took a voluntary nonsuit against Modular Building Components, Inc., a nonexisting corporation.

After a hearing the master recommended a verdict for plaintiffs against the defendants as individuals in the amount of $41,868.38, because plaintiffs had recovered $3,131.62 in an earlier interpleader proceeding. The master's report was approved and a verdict entered accordingly by *Perkins,* J. Thereafter the defendants moved to have the verdict set aside. The master admitted error in his report wherein he stated that the plaintiffs were not listed in the schedule of creditors accompanying the bankruptcy petition of MBC, Inc. The latter was a New Hampshire corporation organized on February 4, 1970. Although no stock was ever issued, it was to be held equally between defendants, Radocckia, the president, and Testa, the treasurer. In a second report, the master

found and ruled "that even though the evidence indicates that the plaintiffs were included in the bankruptcy schedule, this was not sufficient weight to change the Master's recommendations," and recommended that defendants' motion to set aside the verdict be denied. This report was approved and an order entered in accordance therewith. Defendants' exceptions were reserved and transferred.

The questions before us on appeal are first whether the master erred in recommending a verdict for the plaintiffs against the defendants as individuals rather than in a corporate capacity upon a written agreement dated September 1970. Second, whether the master's error in his first report was so prejudicial as to require a new trial. For the reasons which follow we uphold the above verdict and hold that there was no error in the denial of defendants' motion to set aside the verdict for plaintiffs.

Some time in 1969, the defendants Testa and Radocckia, Massachusetts residents, set up business operations in Exeter where they began the production of modular residential units. They acquired considerable acreage in Exeter including "Pine Grove" from which was carved the real estate which is the subject matter of this litigation. Defendants took title to this real estate in their own individual names. Neither when they formed MBC, Inc., in February 1970, nor thereafter, did they ever convey the title to their real estate to a corporate entity.

After conversations with the defendants, plaintiffs and the defendants entered into a purchase and sale agreement in September 1970. It covered lots 2 through 5 on "Pine Grove, Plan of Land in Exeter" together with the so-called "town houses" constructed or to be constructed on the premises. The price was $310,000 to be paid in four successive payments of $77,500 each upon the completion and acceptance and conveyance of each of the four lots and town houses thereon. In the agreement the defendants were referred to as the sellers, no mention was made of a corporation and the defendants signed individually. Plaintiffs paid $5,000 as a down payment in accordance with the written agreement.

Thereafter, under an oral agreement with the defendants, plaintiffs advanced an additional $40,000 as "front money" toward the construction of the town houses. In return for plaintiffs' advances, defendants agreed that plaintiffs could start collecting rents from the first town house once it was in rental condition, which they did in February 1971. However, as there were certain items still

unfinished, plaintiffs did not accept the town house as completed and never received a deed to the lot or the town house. Here again the title to the premises remained in the names of the two defendants.

On September 3, 1970, the defendants individually had executed a power of sale mortgage to the Exeter Banking Company of their land on "Pine Grove" which included the land which was the subject matter of the agreement between plaintiffs and defendants. Upon default of the mortgage, the mortgagee foreclosed by a sale held May 17, 1971. This precluded any possibility that defendants could convey the land or town houses to plaintiffs in accordance with their agreement of purchase and sale. Because of financial difficulties, MBC, Inc., the New Hampshire corporation organized on February 4, 1970, in which the defendants were the principal officers and to whom all the stock was to be issued, filed a voluntary petition in bankruptcy on April 7, 1971. It properly did not show as its asset the land in question which was still in the individual names of the defendants.

The defendants introduced the following evidence. The written agreement of purchase and sale was executed in the office of MBC, Inc. At the request of the defendants, the down payment of $5,000 was paid by check to the order of MBC, Inc. The payments making up the subsequent $40,000 advanced as front money were by checks to the same payee. All payments were deposited in the MBC, Inc., account.

Many exhibits to the effect that a corporation known as Modular Building Components, Inc., had decided to settle in Exeter in November 1969, and had worked out a cash flow projection of the proposed units which was presented to the plaintiffs, were introduced. All monies to pay for work, labor and materials performed on the project were paid for from MBC, Inc., accounts. MBC, Inc., showed the $45,000 payments made by plaintiffs as a corporate obligation. The mortgage payments relating to the project were being paid off with MBC, Inc., funds. It is the position of the defendants that the above and other similar evidence shows clearly that the transaction was one between individual plaintiffs and a corporation.

Corporations necessarily act through agents and if one so acting is to escape personal liability for what he intends to be a corporate obligation, the limitation of his responsibility should be

made to appear on the face of the instrument. Otherwise the individual signature imports a personal liability of the signer. *Watters v. DeMilio*, 390 Pa. 155, 159, 134 A.2d 671, 674 (1957); *see* 19 Am. Jur. 2d *Corporations* § 1343 (1965). Unless the nature of the obligation undertaken is clear as a matter of law, the type of obligation by the defendant becomes a question of fact for the trial court. 17A C.J.S. *Contracts* § 347 (1963).

Assuming that the nature of the obligation of the defendants is ambiguous, we consider the findings of the master. He properly made the following findings. "The plaintiffs . . . were individuals with limited experience in real estate transactions or legal affairs generally. The defendants on the other hand were experienced in real estate operations and fairly well versed in the legal phases of such operations . . . . The defendants established an office and place of business in Exeter. Certain signs, publicity, advertisements and the like indicated that MBC, Inc., was engaged in the real estate business and modular home construction. However, for the most part, all of such indicia bore the name 'Modular Building Components, Inc.' a non-existing corporation . . . .

"In the agreement, there was no mention of any corporation nor any reference that the defendants were acting in any but their individual capacities. During the negotiations, the defendants did not represent to the plaintiffs that they were dealing as agents of any corporations. Whatever the intent of the defendants may have been, their intent to act in a corporate capacity was not conveyed to the plaintiffs. The plaintiffs were entitled to rely upon the agreement itself, which set forth that the defendants were individually the owners of the property, and that they were dealing with the plaintiff[s] as individuals." *Sago v. Ashford*, 145 Colo. 289, 291, 358 P.2d 599, 600 (1961).

"The master finds and rules that there never was an agreement by the plaintiffs, orally, in writing, or to be inferred from any conduct on their part to modify or alter the agreement." The master recommended a verdict for plaintiffs which was approved by the presiding justice. *See Wilcox v. Henderson*, 90 R.I. 472, 479, 159 A.2d 797, 801 (1960).

Defendants filed a motion to set aside the verdict based in part on a finding by the master that the plaintiffs were not listed as creditors in the bankruptcy proceedings of MBC, Inc. There is no dispute that the master erred in this respect. Plaintiffs were in

fact listed as unsecured creditors in the amount of $45,000. Defendants maintain that this error went to a central issue and that it must have unduly influenced the master's decision when he reconsidered his first report. He then found and ruled that the error, which he corrected, was not of sufficient weight to alter his recommendation of the verdict for plaintiffs. We hold the master's action approved by the presiding justice was proper. *Faust v. General Motors Corp.*, 117 N.H. 679, 377 A.2d 885 (1977).

As the master's findings (except the finding admitted to have been erroneous), rulings and verdict were supported by the evidence, and were not erroneous as a matter of law, the order is

*Judgment for plaintiffs.*

All concurred.