NEW-YORK,
May, 1829.

Douglass
v.
Tousey.

## DOUGLASS *vs.* TOUSEY.

In an action of slander, proof of the character of the plaintiff subsequent to the speaking of the words is not admissible, although the character offered to be proved is of such a description as that it could not have been caused by the speaking of the words, i. e. the defendant will not be permitted to prove that the plaintiff is reputed a common prostitute, when the words charged are that she is a thief. General character is the estimation in which a person is held in the community where he has resided, and ordinarily, the members of that community are the only proper witnesses to testify as to such character.

A witness who goes to the place of the former residence of a party to learn his character, will not be allowed to testify as to the result of his enquiries.

A verdict will not be set aside for irregularity, where the jury have separated after agreeing to a sealed verdict, and on coming into court, one of the jurors dissents to it, who subsequently, on the jury being sent out again, agrees to the verdict as originally rendered.

Where a judge directs a jury to bring in a sealed verdict, and gives them permission to separate after agreeing on the same, if no objection is made by the parties to such direction, they will be deemed to have assented to it.

Where the evidence is contradictory, making it the duty of a jury to decide upon the credibility of the witnesses, the court will not set aside a verdict as against the weight of evidence, although it seems to preponderate against the finding of the jury.

A new trial will not be granted on the ground of excessive damages in an action of slander, unless the amount is so flagrantly outrageous and extravagant as manifestly to shew that the jury acted corruptly, or under the influence of passion, partiality or prejudice.

THIS was an action of slander, tried at the Monroe circuit, in March, 1828, before the Hon. JOHN BIRDSALL, one of the circuit judges. The words charged, and which were proved on the trial to have been spoken, were, "you are a thief, you stole my wife's dress." The plaintiff had resided in Owego, and had removed to Rochester but six weeks before the speaking of the words complained of, where she kept a boarding house. The defendant and his wife, and a number of other persons boarded with her, and on the occasion of the speaking of the words, the house was broken up. The defendant, for the purpose of shewing the general character of the plaintiff to be bad, offered to prove that she was a common prostitute. This evidence was objected to, unless it was confined to the character of the plaintiff previous to or at the time of the speaking of the words laid in the declaration, and the objection was sustained by the judge. The defendant then offered to prove by a Mr. Jones that he had been to Owego, where the plaintiff had formerly resided, for the purpose of learning her character, and to subpœna witnesses to prove such character, and that he there found her character to be bad. This evidence was also rejected. The defendant further offered to prove the character of the plaintiff by a witness, who stated that he knew nothing respecting her character except what he had learnt

from two persons who attended from Owego at the last cir-
cuit, as witnesses in this cause. This offer was also refused.
The defendant also offered to prove by a Mr. Kempshall,
who was a boarder with the plaintiff at the time of the speak-
ing of the words, what was said of her by her boarders, which
was also rejected. It was late in the evening when the
cause was submitted to the jury, and the judge, without the
consent of the counsel, directed the jury when they had
agreed upon their verdict, to seal up the same and bring it
into court the next morning. The jury agreed upon a ver-
dict for the plaintiff for $500 damages, sealed it up and sep-
arated. In the morning, they came into court and delivered
in their verdict, and on being polled, one of the jurors dis-
sented to it, who stated that being unwell and unable to sit
up all night, he had agreed to the verdict, but it was not his
judgment. The judge directed the jury to retire and delib-
erate further. One of the jurors stated, that since their sep-
aration, they had heard many stories from various persons on
the subject of the suit, and it was impossible to know what
influence those stories might have upon their verdict.
The jury retired, and shortly after came into court and
delivered a verdict for the plaintiff for $500 damages ;
the juror who had before dissented stating that he had re-
ceived such explanation of the testimony from his fellows
that he was now content to find the verdict which had been
pronounced.

The defendant moved for a new trial, because, 1. The
judge rejected proper evidence; 2. On the ground of irreg-
ularity in rendering the verdict ; 3. Because the verdict was
against the weight of evidence ; and 4. On the ground of the
excessiveness of the damages.

*S. Boughton,* for defendant.

*E. Griffin,* for plaintiff.

*By the Court,* MARCY, J. 1. It is said the judge erred in
refusing testimony of the bad character of the plaintiff sub-
sequent to the speaking of the words laid in the declaration.

It is a well established principle, that the defendant in an
action of slander may mitigate damages, where he has not

justified by proving the general bad character of the plaintiff before and at the time of uttering the slanderous words imputed to him, but proof of bad character subsequent to that time is not admissible. (2 *Campb. R.* 251. *Starkie's Ev.* pt. 4, 369, 878.) Although the bad character which the defendant offered to prove as existing subsequent to the words spoken was of such a description that it could not have been caused by a belief of the charge made by the defendant, this circumstance should not induce the court to extend the rule of law on this subject beyond the limits established by the authorities referred to ; because, if such was known to be the rule, defendants might indirectly contribute to the reputation of the plaintiffs' bad characters, for the very purpose of reducing the damages in actions of slander already instituted against them.

Jones, one of the defendant's witnesses, went to Owego, the former residence of the plaintiff, to learn her character and to subpœna witnesses to prove such character while she resided at that place ; and the defendant offered to prove by him that he learned while at Owego that her character was bad, but the judge refused to admit this evidence. This mode of establishing the plaintiff's bad character seems to be unusual, and, as a general rule, there is much reason to fear it would prove a very unsafe one. The general character is the estimation in which a person is held in the community where he has resided, and ordinarily, the members of that community are the only proper witnesses to testify as to such character. It would be unsafe to rely upon the testimony of the defendants' agent, sent into that community an entire stranger, it may be, to collect information to subserve the defendant's views in the suit. Such witness would not speak of his knowledge of the plaintiff's character, or give his own opinion in relation thereto, but barely state his conclusion upon the information received from others. This would be hearsay evidence and nothing more. Evidence of character is founded on opinion, and a witness testifying as to the general character of another must have the means of knowing such general character. (*Phil. Ev.* 209, 212.) His testimony was therefore properly refused by the judge. For the

same reason, the evidence of what two persons from Owego, (who had at another circuit attended as witnesses for the defendant in this cause,) related, was very properly rejected.

The opinion of the plaintiff, as entertained and expressed by her boarders, did not constitute her general character, and the testimony of Kempshall offered on that point was inadmissible.

There were several other exceptions taken to the decisions of the judge in the course of the trial, but none of them appear to be such as call upon this court to interfere with the verdict given in the cause.

. 2. The defendant also asks to have the verdict set aside, on the ground of irregularity. It was late in the evening when the cause was committed to the jury. The judge, without the expressed consent of the counsel, directed them to seal up their verdict and bring it into court the next morning. They presented their sealed verdict, according to the direction of the court; and when polled, one of them refused to agree to it. When asked why he signed the verdict, he said he was unwell and unable to sit up all night. The judge sent the jury out again, and they finally brought in the same verdict which they had signed and sealed the evening previous. The juror who had dissented from the sealed verdict stated to the court that he had received such explanation of the testimony from his fellows that he was satisfied with the verdict. The ancient strictness in regard to the conduct of jurors has of late years been somewhat relaxed. In the case of *The People* v. *Douglass*, (4 *Cowen*, 26,) it is said by the chief justice, that "In a civil suit at this day, it is perfectly clear that the separation of the jury without, and even contrary to the direction of the court, would not, of itself, warrant the court in setting aside their verdict." Where there is no evidence or suspicion of abuse while the jury are separated, their verdict will not be disturbed. (1 *Cowen*, 221. 5 *id.* 283.)

In the case of *Bunn* v. *Hoyt*, (3 *Johns. R.* 255,) a question arose very similar to that now before the court. The jury retired, deliberated several hours, sealed their verdict, separated, and the next morning brought it into court. On

being polled, one of them disagreed to it.    The judge (Ch. J. Kent) sent them out again, and the disagreeing juror ultimately assented to the verdict which had first been brought in under seal.    It is not stated in the case of *Bunn* v. *Hoyt*, that the bringing in a sealed verdict was by the direction of the judge, or by the acquiescence of the counsel for the parties, but it probably was so.    In this case, the trial closed at a late hour at night, and the judge directed the jury to seal their verdict, and gave them permission to separate.    There being no objection to this course on the part of the defendant, he must be deemed to have tacitly assented to it.    The verdict cannot, therefore, be set aside for the alleged irregularity in receiving it.

3. It is said the verdict is against the weight of evidence.    The evidence presented in the case seems to be in favor of the defendant; but whether it is so manifestly against the finding of the jury as to call on this court to grant a new trial, is a matter of some doubt.    There was contradictory evidence as to the words spoken.    This devolved upon the jury the duty of reconciling the conflicting testimony; and, in case that could not be done, of deciding upon the credibility of the witnesses.    Their decision was upon a matter peculiarly within their province, and the court ought not to review and reverse it.

4. The damages also are complained of as excessive. The amount allowed the plaintiff is certainly very liberal; but the rule is, that in actions of slander the court will not grant a new trial on the ground of excessive damages, unless the amount is so flagrantly outrageous and extravagant as manifestly to shew that the jury acted corruptly, or under the influence of passion, partiality or prejudice.    The verdict in this case does not warrant such an inference.

Motion for new trial denied.