### ROBERT M. CHARLTON,

Appointed Judge, December 31, 1835.

### RANDOLPH B. FELL vs. ELIZA G. ABBOT.

*Motion for new trial and supersedeas.*

If a verdict be clearly against evidence, a new trial will be granted.

But where there has been conflicting testimony, and the case has been fairly submitted to the Jury, and it does not appear that any rule of law has been violated, or injustice done by the verdict, a new trial asked for, on the ground, that such verdict is against the weight of evidence, will not be granted.

The Judiciary Act of Georgia, which directs that "no interest shall be given on any open account, in the nature of damages," does not prohibit a *Special Jury* on an appeal trial from assessing damages on the principal sum, for a frivolous appeal, though the action was in its inception founded on open account, if such Jury are satisfied that the appeal was frivolous and intended for delay only.

And the question whether such appeal be frivolous, is exclusively for the Jury.

Where a verdict has been rendered by a Petit Jury on an open account, and such verdict has been appealed from, *it seems* that interest can only be computed on such demand from the verdict of the Appeal Jury.

The Judicial and Legislative construction in Georgia, of the words "*unliquidated demand*" and "*open account*" has been to consider all as such, unless there be some *written* acknowledgement or promise by the debtor. A *verbal* acknowledgment of indebtedness in a definite sum, accompanied with a promise to pay, does not constitute it a liquidated demand.

A new trial may be granted *on terms.*

### By CHARLTON, Judge.

THIS was an action of *indebitatus assumpsit,* for money had and received, and was brought originally in the name of *Randolph B. Fell* and *wife*, against the defendant. A verdict was obtained by the plaintiffs, before the Petit Jury, with interest from 27th July, 1833, and from this verdict an appeal was entered by the defendant. Upon the first trial, before the Special Jury, the presiding Judge charged the Jury, that where husband and wife joined in the action, the interest of the wife could not be infer-

red, but must appear expressly in the declaration, and the Jury not being able to agree, a juror was withdrawn, and a *mis-trial* declared. The attorney of the plaintiff then amended his declaration, by striking out the name of the wife wherever it appeared, and the case, when it came before me, stood for trial in the name of *Randolph B. Fell* only ; and after hearing evidence and argument of counsel, the Special Jury returned a verdict for plaintiff for $300, with interest from 27th July, 1833, and ten per cent on the principal sum, as damages.

A new trial is now moved for, on the following grounds :—

" 1st. Because the verdict of the Jury is contrary to evidence, because by confession of the plaintiff, it appeared that the money for which the action was brought, was money arising from the sale of trust property, belonging to the plaintiff's wife, who had then, and now has, a subsisting Trustee."

An application for a new trial, is an application to the discretion of the Court, who ought to exercise that discretion in such a manner as will best answer the ends of justice. (*Edmonson* vs. *Machell*, 2 Term. Rep. 4.) If a verdict be clearly against evidence, a Court will not hesitate to render justice, by granting a new trial, but " it may be regarded as a proposition containing a rule of universal application, and one *instar omnium*, that where an issue of fact is fully and fairly submitted upon its merits, and the Jury, in the free exercise of a sound judgment, pass upon it, their verdict shall stand." (*Graham* on new trials, 362. Arch. Prac. 222. *Gra.* Prac. 514.) And the fact, that the Jury have found the issue in favor of the party, against whom, in the opinion of the Court, the weight of evidence preponderated, will not be sufficient ground for granting a new trial, unless some rule of law has been violated, or manifest injustice done. This principle will be found in almost all the authorities on this point, and particularly in *Ashley* vs. *Ashley*, 2 Str. 1142. 1 *Wils*. 45. 3 *Wils*. 45. *Lewis* vs. *Peake*, 7 Taunt. 153. *Hartwright* vs. *Badham*, 11 Price 383. *Douglass* vs. *Tonsey*,

2 Wendell 352. Now by applying this principle to this case, I cannot say that any rule of law has been violated, or any injustice done. There was conflicting testimony. On the part of the defendant, Mr. *Stephen Mitchell* testified, that the plaintiff informed him, that the money received by defendant from plaintiff's wife, was derived from the sale of a house, secured to the wife by the marriage settlement between plaintiff and wife. On the other hand, *Levi S. De Lyon*, Esq. swore, that he was the original trustee to such marriage settlement, and had continued to be such, until changed by an order of Court, made during the progress of this cause, and that the house, from the sale of which it was alleged, these funds were derived, had never been sold, and was now a part of the trust estate. In my charge to the Jury, I expressly told them, that if they believed, from the evidence in the case, that the money received by the defendant, was derived from the trust estate, or that it did not belong to the plaintiff, they must find the verdict for defendant, but if they had no satisfactory evidence of that fact, or if they believed from the evidence, that this money belonged to the plaintiff himself, or that it was acquired by the labor of the wife, without reference to the trust fund, then there was a sufficient privity of contract to sustain the action. The duty of reconciling testimony, or of deciding upon the credibility of the witnesses, is the peculiar province of the Jury, and when they have done so, and I am not satisfied that any rule of law has been violated, nor manifest injustice done by such verdict, I have no inclination to disturb their decision.

But it is urged "2ly. That the verdict is contrary to law, because it was against the weight of evidence, and because the Jury, in rendering their verdict, gave interest on an open account, and damages on facts, that did not legally warrant them in so doing, and also, because there was no privity of contract proved between the plaintiff and defendant."

I may as well dismiss at once the grounds, that it was against

the weight of evidence, and that there was no privity of contract, because as I have already observed, the Jury are the proper triors of the weight of evidence, and because it was expressly left to them to say, whether this was the money of plaintiff or not, and they having found that by the evidence, it was the money of the plaintiff, a sufficient privity of contract has been shown.

The question in relation to damages, is a much more doubtful point. In the judiciary Act of 1799, section 28, (*Prince's* Digest 212,) it is enacted, " that no verdict shall be received on any *unliquidated* demand, where the Jury have increased their verdict on account of interest, nor shall any interest be given on any open account, in the nature of damages." By reference to the other portions of said judiciary Act, we may be enabled to ascertain the intention of the Legislature, in relation to this question of damages. In the 26th section of the same Act, (*Prince* 212,) a right of appeal is given from the verdict of the Petit Jury, in all cases, upon complying with the conditions, of giving security, &c.; and it is further provided, that if " on hearing such appeal, it shall appear to the Jury, that the appeal was frivolous, and intended for delay only, they shall assess damages to the party aggrieved, not exceeding 25 per centum on the principal sum, which they shall find due, and such damages as shall be so assessed, shall be specially noted in the verdict of said Jury." There is no restriction here, on the Special Jury, where the action was in its inception, founded on an open, or unliquidated demand ; nor taking into consideration the spirit and intention of the law, in allowing the Appeal Jury to give damages, would there be any reason in such a restriction. The object is expressly stated, as a punishment, to be inflicted on the person who perseveres in a wrong committed, or a right withheld, for the purpose of delay. If it be true, (as it most certainly is,) that under our law, interest cannot be given, even by a Special Jury, upon an unliquidated or open demand, and that the gaining party would obtain interest on such a demand, not from the date

of the verdict of the Petit Jury, (unless in case of no appeal, or such appeal being dismissed, or withdrawn by consent,) but from the finding of the Special Jury, there is every inducement to a Court to hold, that the clause in relation to damages will not apply to a case like this, and that the Special Jury have the power to punish the wrongful withholding of a right, by the assessment of damages on the principal sum, in cases of frivolous appeal. A contrary construction would uphold injustice, and would be offering an inducement to a dishonest defendant, to appeal from a verdict of a Petit Jury, in cases too clear to admit of a doubt, in order that he might retain, without interest, and without risk of damages being awarded against him, a sum of money to which he had no shadow of claim. Such a law would be a fruitful source of continued litigation, of taking up the time of Courts of Justice by vexatious and unfounded defences, and would be lending the sanction of the law to the dishonest debtor, to aid him in defeating the rights of his honest creditor. I would hesitate long, before I would give a construction so forced and unnatural, and so contrary to right and justice.

But it is said, that a Court will control a Jury in the exercise of this power, and when it perceives that the Jury have found *that* to be a frivolous appeal, which was not so in truth, that a new trial will be awarded. Upon this point I can observe only, that there was evidence of the declarations of the defendant that she would keep the plaintiff out of the money as long as she could, and this, no doubt, had its influence on the Jury, on the question of damages. The question, whether it was a frivolous appeal, is given exclusively to the Jury by the Legislature, and although the Court might be justified, in very outrageous cases, in stretching its authority a little, and grasping at the improper exercise of such power by a Jury, in aid of other reasons for granting a new trial, it wil not interfere, where the amount is so small, and where the defence, though a legal one, was purely technical, and not combined with the equity of the case.

[Fell vs. Abbot.]

The most important question, however, remains to be determined. The Jury have thought proper to give, not only damages, but interest on the principal sum, and the defendants' counsel object, that this being an open account, or unliquidated demand, it is illegal, under our law, to give interest upon it. (*Prince's* Dig. 212.)

The plaintiff's counsel denies that this is an open or unliquidated demand. He contends that it is *a liquidated demand*, and he cites many cases to show, that upon an action like this, interest has been allowed. I cannot give those cases, however, their full effect, because they do not proceed upon the question, whether interest should be given on a *liquidated* demand, but whether interest can be given on the action for money had and received, &c. The rule is settled by our statute, and is made to depend, not upon the form of the *action*, but upon the nature of the *demand*. If it is *liquidated*, it bears interest; if it is *unliquidated*, it does not. I am compelled, therefore, to inquire, whether this claim is, or is not, a *liquidated demand*.

I must confess, that if this were a case of first impression, and untrammelled by judicial or legislative construction, in our own State, I should be very unwilling to designate such a demand as this, an *unliquidated demand*, or *an open account*.

The evidence on the part of the plaintiff, disclosed an express acknowledgment, by the defendant, that she had received $300 from plaintiff's wife, for the purpose of buying a negro, that she had not bought the negro, but had brought back the money, lodged it in a Bank, and would give a check for it, whenever required; and that she subsequently said, that she would not return it, because the plaintiff and his wife had put her to some costs, by suing out a writ of possession against her, and that she would keep the money, until the interest on it reimbursed her for those costs. Here was an acknowledgment of a definite sum, unaccompanied with any legal claim to withhold it; and in fact, in the first instance, accom-

PART II.—G. 3.

panied with an express declaration, that it would be returned when-
ever called for.    In Courts unfettered by any judicial or legisla-
lative construction upon a local statute, as to the meaning of the
word "unliquidated," or "liquidated," I should presume such a
claim as this would be properly denominated, a liquidated demand.
In *Liotard* vs. *Graves*, 3 Caines' Rep. 234, *Spencer* J. says, "If
an account be transmitted by a creditor, and acquiesced in, or as-
sented to by his debtor, it becomes thereby *liquidated*, and interest
is allowed," and many other authorities might be adduced to the
same point.    But I am forced to remember, that a different con-
struction has been given in our own Circuit.    In the case of *Wells*
vs. *Davant*, which was tried in the Chatham Superior Court, in
January Term, 1829, before Judge *Davies*, and which was *as-
sumpsit* on a tailor's bill, the plaintiff's counsel offered to prove
by parol, an express admission of the correctness of the account
by defendant, and a *promise by him to pay interest upon it.* Judge
*Davies* said, "the words of the statute are so positive, that I can-
not allow the Jury to give interest on an *open account.*"  It is
very clear, that he considered an express verbal admission of a de-
finite sum, and an express promise to pay interest thereon, as being
within the intent of our statute, an *unliquidated demand*, or *open
account.*   In the case of *N. B. & H. Weed* vs. *Penny*, tried before
Judge *Law*, of the Eastern District, and Judge *Holt*, of the Mid-
dle District, in *Bryan* Superior Court, I was counsel for the plain-
tiffs in the action, which was also assumpsit on note, and for goods
sold; and for the purpose of proving my bill of particulars, I intro-
duced a letter written by defendant to myself, in answer to a com-
munication to him, in relation to the payment of the claim.    The
letter contained in substance, "I am indebted to them about $40,
and will pay it when my crop comes in."   I took the verdict with-
out interest, on the open account, and after reading it to the Court,
Judge *Holt* said, "Why do you not take interest—is not that a
*liquidated* demand?"   Judge *Law* interposed, and stating that this
was an action brought on an *open account*, and that the practice of

this Circuit had been uniformly, not to allow interest in such cases, directed that the verdict should remain as it was; and interest was only allowed on the note, which formed a part of the suit.

Such is the judicial construction of the meaning of the words "unliquidated demand," in our Circuit, in reference to the judiciary Act of 1799; and although it is believed that most of the Judges in the other Circuits have not gone so far,* and whilst (with great respect to the learned individual who made the last decision,) it may be doubted, whether a *written* acknowledgment, with a promise to pay, can in any view of the matter, be called an open account, (a point unnecessary here to determine,) it is still important to a correct decision of this question, that we endeavor to ascertain what meaning the Legislature have given to the words "liquidated," and "unliquidated demands." In the same statute that contains this prohibition of interest, on unliquidated demands, there is a section (Sec. 25, *Prince's* Dig. 211,) which provides, that "all bonds, and other specialties, and promissory notes, and other *liquidated* demands, bearing date, &c. whether for money or other thing, shall be of equal dignity, and negotiable by endorsement, in such manner, and under such restrictions, as are prescribed in the case of promissory notes, provided, that nothing herein contained, shall prevent the party giving any bond, note, *or other writing*, from restraining the negotiability thereof," &c.

The language of this section is very extensive. It includes "all bonds," and all other "liquidated demands," and it is clear, that it does not contemplate, in the use of the words "liquidated demands," any verbal acknowledgment, no matter how definite it may be, either in terms, or in amount, because none such could "bear date," or be "negotiable by endorsement;" and because the

---

* "An acknowledgment of an open account by letter, is such a liquidation of the demand, as will enable the creditor to obtain interest from the date of the acknowledgment." (*Hicks*, et. al. vs. *Thomas*, Dudley's (Geo.) Rep. 218.)—(*Ed.*)

[Fell vs. Abbot.]

section afterwards gives the right to the party giving such bond, note, or *other writing*, to restrain the negotiability thereof, the words "other writing." evidently having reference to the words "other liquidated demands," antecedently used. I might go on to show, by other statutes, that the legislative construction of the words "unliquidated demands, or open accounts," has been, to consider all accounts as such, unless there be some *written* acknowl_ edgment, or promises by the debtor. But it is deemed unnecessary, and would be extending this decision to too great a length. Acting, therefore, upon the maxim *stare decisis*, and upon the intention of the Legislature, I am constrained to declare, that this was an unliquidated demand, and that consequently, the verdict of the Jury, giving interest upon it, is illegal, and cannot be suffered to remain in its present shape.

But, as I have already observed, a motion for a new trial is addressed to the sound discretion of the Court, and where it is satisfied that injustice has only been done in one point, or rather, where it is only dissatisfied with the verdict on one point, it will grant the motion on *terms.* The Court has sometimes limited the new trial to a single point. (6 *Term. Rep.* 626. Per *Grose, J. Thwai_ tes* vs. *Sainsbury*, 7 Bingham 437.) And various other authorities might be adduced to show, that new trials are frequently granted on extraordinary terms. (*Graham* on new trials, 604, et seq.) I will, therefore, grant this motion, under such restrictions and conditions, as may prevent the whole matter from being re-opened, (unless the plaintiff should decline adopting the suggestion of the Court,) whilst it will purge the verdict of its objectionable part.

It is therefore ordered, That the plaintiff by himself, or attorney, have leave to enter a *remittitur* of the interest given by the verdict of the Jury, on or before the 2d day of March next; and upon such remittitur being entered and filed on record, before the third day of March next, that the order for *supersedeas* be annulled, and the motion for new trial refused:—And it is further ordered,

That if said interest be not released and remitted before the 3d day of March next, 1836, that then the motion for a new trial be granted, and the order of supersedeas continue and be of force, until the determination of the cause.

M. Sheftall, Senr. & C. S. Henry, for the motion—L. S. De Lyon, against it.