LOVETT R. MELLON and others *v.* JOHN W. SMITH.

Although due vigilance requires that a steamboat should, at night, have a competent person on the bows as a look-out, the absence thereof is not *of itself* sufficient evidence of such negligence on the part of her owners to prevent a recovery against another vessel for a collision, where it appears, from the brightness of the night and other circumstances, that the omission *did not contribute* to the accident.

A sailing vessel approaching a steamboat has a right to keep her course, and it is the duty of the steamboat to be active and vigilant to avoid her.

To warrant a recovery by the owners of a steamer for a collision with a schooner, they must show, by a preponderance of evidence, that the accident was occasioned by fault of the schooner, and it must not appear that any fault of the steamer conduced thereto.

Mellon v. Smith.

The rule governing appeals from the justices' courts, namely—that the finding is to be treated as the verdict of a jury, and not to be set aside, where the proofs are conflicting, merely because the evidence seems to the appellate court to preponderate against the finding, unless the case is so clear as to show bias, partiality, undue influence, or plain mistake or misapprehension—affirmed and applied to an appeal from a judgment in favor of the owners of a steamer as plaintiffs, against the owners of a schooner as defendants, in an action for a collision.

THE complaint in this action alleged, "That while the steamboat South America, whereof the plaintiffs are owners, was proceeding on her trip or passage from New York to Hudson, on the night of the 3d of November, 1851, sailing against the wind, the schooner Celeste, whereof the defendant was owner, while proceeding on her passage from Albany to New York, and sailing free before the wind, by and through the carelessness of the said defendant and his agents or servants, came into collision with the aforesaid steamboat of the said plaintiffs, on the night aforesaid, on the Hudson River, injuring the said steamboat, her tackle, apparel and furniture, to the amount of $100, for which the said plaintiffs pray judgment."

The defendant answered by a general denial. The cause was tried in the First District Court, where the plaintiffs recovered a judgment for $66 67 and costs, from which the defendant appealed.

The material facts are disclosed in the opinion. The appellant's counsel, on the appeal, made the following statement:

"The steamboat having left New York at 5 P. M., against the tide, found herself near Hyde Park, a distance of eighty miles, at midnight, it being then slack water. "She was thus going, then, at least twelve miles an hour. "It was a very bright moonlight night, and soon after making the landing at Poughkeepsie, she saw, at a distance of more than a mile ahead, a thicket of sailing vessels half way between Crum Elbow and Hyde Park, occupying the easterly portion of the river, which is there straight, and three quarters of a mile wide. "The whole westerly portion of the river was

clear. "She, without hailing, ran at that rapid rate into the midst of those vessels. "In attempting to go between them, she came in collision with the bowsprit of the schooner Celeste, bound down, on the starboard tack, heavily loaded with lumber; carried away her bowsprit and jib-boom, and otherwise seriously injured her. "The steamboat was also slightly injured on her starboard side, and brought this action in the court below for the damages, and recovered $66 67 and costs, from which we appeal."

*Charles L.* and *Erastus C. Benedict*, for the defendant, made the following argument:

I. Steamers, being of vast power and speed, and liable to inflict great injury, if not carefully managed, and being also propelled against wind and tide, and easily changed in any direction by a powerful internal agency, controlled by man, are bound to take every possible precaution in favor of vessels propelled by the uncertain and uncontrollable forces of winds, tides and currents. With plenty of sea room and clear light, a steamboat is bound to avoid a sailing vessel, and is liable in damages if she do not. (*St. John* v. *Paine*, 10 Howard, 556, 583; *Newton* v. *Stebbins*, Ib. 586; *The James Watt*, 2 Wm. Rob. 270; *The Leopard*, Davies' Rep. 193, 197; *The Perth*, 3 Hag. 415, 416; *The Friends*, 1 Wm. Rob. 478; Story on Bailments, § 611, *b.*; *Adams* v. *Steamboat Bay State*, Judge Judson; *The Hope*, 1 Wm. Rob. 154.)

II. The evidence shows, that with ordinary care even, the steamboat could not only have avoided the schooner, but render a collision impossible. It was a very light night. The river is straight, and three quarters of a mile wide—good water all across, and no rocks. When over a mile off, the pilot of the steamboat saw the vessels. The Celeste and another vessel were coming down about the middle of the river, on the privileged tack, and four sloops and a schooner were also coming down to eastward of them. They lay near together, within the space of forty or fifty rods. She had

Mellon *v.* Smith.

thus at least seven eighths of a mile ahead, and three eighths of a mile—half of the whole width of the river—to westward, clear sea. She made no effort to avoid a collision until close upon the schooner. She "did not hail them," but rushed at full speed, attempting to make a "close shave," so that if she had not stopped her engine, and "sheered a little to westward before she stopped," she "would have run right over the Celeste." They only "stopped her engine—did not back her."

III. In all collision cases, the plaintiff is bound to show, by a preponderance of evidence, that the accident was occasioned by fault of the defendants, and that no fault of the plaintiff conduced thereto. (*Paine* v. *The Neptune*, Judge Betts' Opinion; *Stebbins* v. *The New Jersey*, Ib.; *Olmsted* v. *The Sandusky*, Ib.; *Corks* v. *The Steamboat Belle*, Ib.; *Noxon* v. *Steamboat Columbia*, Ib.) If there be any fault on the part of the steamboat, she cannot recover. (*Barnes* v. *Cole*, 21 Wend. 188; *Spencer* v. *The Utica and Schenectady Railroad Company*, 5 Barb. 337; *Rathbun* v. *Payne*, 19 Wend. 399; *Hawkins* v. *Dutchess and Orange Steamboat Company*, 2 Ib. 452.) The evidence shows the steamer was in fault. 1. In not having a competent person on the bows as a lookout—not to see the channel, but to watch; to give notice and direction to the pilot, and to hail approaching vessels, and to observe and to remember what was done. (*St. John* v. *Paine*, 10 Howard, 583; *Newton* v. *Stebbins*, Ib. 605; *The Leopard*, Davies, 197; *The Shannon*, 2 Hag. Ad. 173; *The Perth*, 3 Ib. 414; *The Rose*, 2 Wm. Rob. 1; *Bedell* v. *The Emily*, 6 Leg. Obs. 340, 343; *Smith* v. *Pilot-boat Blossom*, Ib. 374, 377; *Acker* v. *Steamboat Rainbow*, Judge Betts; *Adams* v. *Steamboat Bay State*, Judge Judson.) This, of itself, is sufficient to prevent her recovering. 2. In attempting to pass at full speed through a thicket of vessels. 3. In not keeping straight on, without any sheer, after she determined not to go to westward of all the vessels. 4. In stopping her engine when she did, instead of keeping on. 5. In not backing the boat when she determined to stop her engine. 6. In

not sooner sheering to westward, and passing on that side of all the vessels, when there was plenty of room and no occasion to *shave close.* If the steamer, going one thousand feet a minute, had not stopped, she would have cleared the schooner. If she had not only stopped, but backed, the schooner would have cleared her. If the steamboat had sheered only a little more, or a few seconds sooner, to the westward, or had been sheered to the eastward, no matter how little—or had had a competent look-out on her bows forward, to hail the schooner—there would have been no collision.

IV. The schooner was not in fault. The plaintiffs' witnesses say, that the steamboat kept straight up, the Celeste being to west of her till just before the collision, when she steered to west, and the Celeste suddenly crossed over in a diagonal manner from the west to the east side of the river, and after she got on the east side, then turned short about and ran into the steamboat, which had just sheered to the westward and stopped. This cannot be so. The pilot of the steamboat (a man greatly interested to prove himself clear of blame, who says, "*I should think* she passed in front of us,") and a deck hand, are the only witnesses who say she bore to the east. They are contradicted by the mate of the Celeste, by Lamb, from the Olivia, and by Stilwell, the man whose hand was on the tiller. In the rapid and alarmed observation of the few seconds before the collision, nothing would be more likely than that the persons on the steamboat should mistake one vessel for another, or apparent motion of the Celeste (caused by the rapidity of the steamboat) for real motion—while those on the Celeste could not be mistaken. The evidence of witnesses as to what was done on their own vessel, is far more reliable than the impressions formed by those on other vessels in rapid motion. (See *St. John* v. *Paine,* Judge Betts' Opinion; *The Naugatuck Navigation Company* v. *The Steamboat Rhode Island,* 6 Leg. Obs. p. 18; *Rogers* v. *The Blauvelt,* Judge Betts' Opinion.) A most clear preponderance of

.testimony is needed to convince the mind that so singular and improbable a manœuvre was undertaken by the Celeste.

V. But if there be some evidence going to show such a manœuvre, that does not entitle the steamboat to recover, because it was caused by a false movement of the steamboat. (*Hinckley* v. *Ship Northumberland*, Judge Betts' Opinion.) The effect of the blow, and the evidence of almost every witness, show that the steamboat ran up close to the vessels, and then turned to the left instead of to the right, and attempted to pass to the west, just across the bows of the Celeste, *and was making a close shave.* The schooner "had a right to rely to the last moment upon the ability and care of the steamboat; and if, in the alarm resulting from the instant danger, she adopted a false manœuvre, that will not excuse the steamboat, since the confusion, and all the consequences of the then situation of the two vessels, were occasioned by her fault." (*Field* v. *The Argus*, Judge Betts' Opinion; *Tisdale* v. *The Steamboat Hero*, Ib.) The steamboat was going at the rate of a mile in five minutes, and the schooner a mile in eight minutes. They would thus meet in three minutes. It is plain, that after keeping her course, as she was bound to do, till the steamboat was nearly on her, there was no time for the Celeste, heavily laden as she was, to accomplish any manœuvre, while self-preservation would justify her in attempting any thing she might try to do. All the probabilities, and the great preponderance of evidence are in favor of the defendant, and it is not possible to hold the steamboat free from fault.

*Felix Hart*, for the plaintiffs.

BY THE COURT. WOODRUFF, J.—This is an action brought by the owner of a steamboat against the owners of a sailing vessel, for injuries sustained by a collision between the two vessels on the Hudson River, in the night season, while the steamboat was ascending, and the schooner, with the wind fair, was descending the river.

The action was tried before the justice, without a jury, and no ruling upon any specific question of law appears by the return, nor is there any special finding of facts upon which we can see that the justice erred in the rules of law which he applied to his finding upon the evidence.

Nor did the counsel for the parties differ on the argument respecting the rules of law by which the navigation of steamboats and sailing vessels are to be governed.

It was not denied, by the counsel for the respondents, (owners of the steamboat,) that the sailing vessel had a right to keep her course, and that it was the duty of the steamboat (having seen the schooner at the distance of over a mile) to avoid her if she did so.

Nor did the counsel deny that if the owners of the steamboat were in fault, they could not recover.

The unexplained finding of the justice comes to us in a form so general, that we must say that the justice has found that the injury complained of was caused by the negligence or want of skill of the persons engaged in the navigation of the schooner, and that no negligence or want of skill on the part of those who navigated the steamboat contributed thereto.

It is undoubtedly true, as in substance insisted by the appellant's counsel, that the plaintiff was bound to show, by a preponderance of evidence, that the accident was occasioned by the fault of the defendant, and it must not appear that any fault of the plaintiff conduced thereto.   And assuming this to be the true rule, the justice must have found upon the evidence that the injury was so occasioned.

Did the evidence warrant such a finding? or rather, was such a finding so clearly against the weight of the evidence that the judgment should be reversed upon that ground?

If the appellant is right in the proposition, that the steamboat was bound, at all events, to have kept a competent person stationed on her bows as a look-out, and that not having proved that she did so, she is to be deemed in fault, as matter of law, and therefore not entitled to recover,

Mellon *v.* Smith.

then the judgment must be reversed without further inquiry.

But upon examination of the evidence, three things are observable, bearing upon this question:

*First.* No proof was given by either party to the precise point. Whether the steamboat had a look-out exactly upon the bows or not, does not appear. But Davis, one of the plaintiffs' witnesses, does testify that he was a deck hand, and was on the forward deck at the time, and *did see* the schooner.

*Second.* It does appear that the persons navigating the steamboat did, in fact, see the schooner as soon as, from the course of the river, she was visible, and if so, the presence of a look-out on the bows would not have aided her in avoiding the schooner, nor would the absence of such look-out have rendered a collision more probable. It was a clear night, and the men on each vessel distinctly saw the other.

Thus, Hulse, mate of the schooner, first saw the steamboat as she was coming around Crum Elbow. And Storms, the pilot of the steamboat, says, that when he first saw the sailing vessels, (the schooner in question being the *furthest off* of five sailing in the neighborhood of each other,) " they were *more* than *a mile* off." And Davis swears that the schooner in question was about a quarter of a mile behind the schooner which was immediately ahead of her.

So that, according to the evidence of both parties, each saw the other as the steamboat came around Crum Elbow, when the schooner in question was from a mile and a quarter to a mile and a half distant.

It was a bright moonlight night; and under such circumstances I cannot perceive that the question, whether there was or was not a man on the bows of the steamboat, was material. If he was there, he could only see and communicate to the pilot what the pilot himself in fact saw. And if he was not there, the pilot lacked no knowledge of the proximity of the schooner.

Without at all questioning the cases cited by the appel-

lant's counsel to show the necessity of a look-out, I do not understand those cases to go the length of saying, that under *all circumstances* the absence of such a look-out shall be deemed faulty negligence, so as to subject the steamboat to blame, whether the absence of the look-out *did* or *did not* contribute to the injury.

The necessity of such a look-out must depend upon the time, the state of the weather, the nature of the danger to be guarded against; and if the court below find that the absence of such look-out did *not contribute* to the injury in the particular case before them, then it will not prevent the recovery by the plaintiffs.

But, *Third.* The plaintiffs were not bound to prove affirmatively any thing more than they had alleged in their complaint, *i. e.*, that the steamboat was injured by or through the carelessness and negligence of the defendant or his agents. Having established this by *prima facie* proof, without showing want of care or skill on his own part, it was for the defendant to show, by way of *defence*, that negligence on the plaintiffs' part concurred in producing the result. If under the pleadings in this case, in which the answer was a mere denial of the plaintiffs' allegations, the defendant was at liberty to do this, the burden was cast upon him.

The case, therefore, to my mind, presents only the general inquiry above stated—Is the finding of the court below upon the whole case, that the plaintiffs' boat was injured by the negligence of the defendant, without fault on the part of the plaintiffs, so far against the weight of the evidence that the judgment should be reversed upon this ground?

All the points of the appellant, except the one above noticed, are addressed to this; and in considering it, it is not necessary to question either of the legal propositions contained in the points, nor were they controverted by the respondent's counsel on the argument.

The sailing vessel had a right to keep her course. The plaintiffs had a right to assume that she would do so, and were bound to govern themselves by that assumption, unless

Mellon *v.* Smith.

and until they saw her in fact change. And under that assumption the plaintiffs were bound to be active and vigilant in their endeavors to avoid her.

I am free to say, that upon a very careful examination of the evidence contained in the justice's return, without any aid from personal observation of the witnesses, and their manner of testifying, my mind is led to a conclusion of fact the reverse of the justice's finding. The plaintiffs' theory appears to be that the officers of the steamboat were active and vigilant in their endeavors to avoid the vessel, but were actually run into by the latter, by reason of her making an unexpected change to the westward shortly before they came abreast of each other. That a steamboat, under full command, with steam fully adequate to her control, with power to go backward or forward, to the right or to the left, at the pleasure of the pilot, should be unable, by the use of activity and vigilance, to avoid a heavily laden schooner in an open sea, and in full view for over a mile, seems, to my mind, not a little extraordinary.

Again, one of the *plaintiffs'* witnesses says, that the steamboat stopped before the collision, and if she had not stopped there would have been no accident. And I think the speed of the vessels and their relative positions show that he is probably correct in this.

It is true that the pilot of the steamboat says, " If I had not stopped, we would have run right over the Celeste," the schooner.

It seems to me that the undisputed fact that the larboard bow of the schooner struck the starboard side of the steamboat thirty feet back of the stem, shows, beyond possibility of dispute, that in this he is mistaken; for *although* the *steamboat stopped*, her stem passed beyond the schooner before she struck. How, then, if the steamboat had not abated her speed, would she have run "*right over*" the schooner? Again, the steamboat could go *backward*. If, then, by backing thirty feet, she would have cleared the schooner entirely, it seems not a little surprising that she not only did

not go backward, but that the pilot made no effort to do so. He did not even *reverse* the engine. It seems to me very difficult to say that the steamboat was without blame if she advanced among a fleet of six or seven vessels, all in full view, at such a speed that she could not or would not, either by stopping or going backward, turning one way or the other, avoid them. Besides, upon the main question, *i. e.*, whether the schooner kept her course, it seems to me that the balance of the evidence is in favor of the defendant. The mate of the schooner testifies that he gave express directions to the helmsman, when he saw the steamboat, to keep her course, *i. e.*, to keep her steady; and that he did so. The helmsman swears positively that he did so. Another witness, a ship captain, then on board the schooner, who saw the whole, says, the schooner kept her course.

Two witnesses for the plaintiffs contradict this, and the evidence of two others corroborates them to some extent. But when it is considered that the steamboat turned to the west before the collision, it is easy to see that much if not all of the plaintiffs' evidence on that head may be explained by the fact, that the motion of the steamboat westward presented the schooner, to the *eyes* of those witnesses, in the same relative position as if the schooner herself had changed her course to the eastward.

The most probable explanation of the disaster appears to me to be, that the steamboat turned to the westward in an endeavor to pass across the track of the schooner, *i. e.*, to pass between the two schooners; which is the precise explanation suggested at the moment of the occurrence, and not then denied by the pilot of the boat.

These suggestions serve as reasons why, upon the written evidence, I think I should have come to a conclusion different from the finding of the court below. But it does not follow that we should reverse the judgment.

There is a great conflict in the testimony. The court below had the witnesses before them, and an opportunity to observe their appearance and manner of testifying, and su-

Mellon *v.* Smith.

perior means of judging of their credibility, and the degree of weight to be given to their testimony. The very discussion in which I have indulged shows that the case was not free from doubt. The plaintiffs' witnesses say that the schooner changed her course to the east before the collision, and had actually passed to the eastward of the steamboat's course, so that the pilot had a right to assume, and did assume, that she would continue on that course, and pass the steamboat; and the pilot having turned to the westward, to give her room, was suddenly surprised by the schooner luffing and coming down upon the boat.

Under such circumstances, I think, we cannot set aside the finding of the court below. We treat the finding of the justice as we would the verdict of a jury. And where the evidence is conflicting, we do not set it aside merely because the evidence seems to us to preponderate against the finding. To warrant this, the case should be so clear (as we have heretofore often held) that we deem it to show bias, partiality, undue influence, or plain mistake or misapprehension. The principles of *Douglass* v. *Tousey*, 2 Wend. 356; *Keeler* v. *The Firemen's Insurance Company*, 3 Hill, 256; *Rathbone* v. *Stanton*, 6 Barb. Sup. Ct. Rep. 143, are in accordance with these views; and if we were to adopt the rule laid down in *McDonald* v. *Edgerton*, 5 Barb. Sup. Ct. Rep. 562, as governing appeals under the Code, there would be no room for the discussion.

Upon the whole, I feel constrained to say, that the judgment must be affirmed.

DALY, J., concurred.

The FIRST JUDGDE not having been present at the argument, took no part in the decision of the case.

Judgment affirmed.