## High vs. Johnson.

**Verdict—Jury:** (1) *Directing jury to sign and seal verdict and bring it into court.* (2) *Sending jury out to perfect verdict by inserting damages.* (3) *Direction to insert nominal damages, need not be in writing.* (4) *Such direction, in replevin, not necessary, but not error.* (5) *Polling jury after verdict recorded.*

1. Whether or not a court may, against the objection of either party, direct the jury to sign and seal their verdict and bring it into court the next day, it may at least give such direction when neither party objects.

2. Upon the re-assembling of the jury, and the opening of such verdict, the court may send them out again to perfect it by the insertion of damages.

3. A direction to the jury, after the return of the verdict, to retire and insert nominal damages therein, was not a part of the "charge," and was not required to be in writing.

4. Although, in replevin, a finding of any damages, actual or nominal, is not necessary to sustain a verdict and judgment in plaintiff's favor, yet, where the jury had refused to find any damages, it was not error for the court to peremptorily direct them to find a nominal sum of six cents.

5. After verdict received and recorded, it is too late to demand that the jury be polled.

APPEAL from the Circuit Court for *Oconto* County.

Replevin, by *Charles B. High* against *Augustus Johnson*, for five horses and five halters. Answer, a general denial, an averment of property in the defendant, and a demand of judgment for a return thereof. Defendant claimed to own the horses by purchase from one Lyman T. High.

The court gave the following among other instructions, at the plaintiff's request:

"1. If you find that Lyman T. High bought any part of the property in question with the plaintiff's money or property, and that such property was placed in plaintiff's possession by Lyman T. High, you must find that such property, so obtained and brought to plaintiff's possession, became plaintiff's property. All the property in question which was bought by Lyman T. High with plaintiff's money and for the benefit of plaintiff's livery, became plaintiff's property."

"5. You cannot decide that Lyman T. High had any right, as the plaintiff's agent, to sell to defendant the property in question, unless you find that Lyman T. High was authorized by plaintiff to make the sale, or that plaintiff had induced the defendant to believe that Lyman was so authorized, and that the defendant did in fact purchase the horses in good faith and with the belief that Lyman was fully authorized to sell the property. If, on the other hand, you find that Lyman T. High, before at-

High vs. Johnson.

tempting to sell the property to defendant, was forbidden to interfere with it, and had no authority to sell it; and if you also find that the defendant conspired with Lyman T. High to get the property in question from the plaintiff, and that defendant had good reason to believe that Lyman T. High had taken the property wrongfully from the plaintiff—then you must find that the defendant could not acquire any interest in or title to the property after such wrongful taking by Lyman T. High."

The sixth instruction given at plaintiff's request is sufficiently stated in the opinion.

Certain instructions asked by the defendant were given; but the following were refused:

"2. If you find that L. T. High had either express or implied authority from the plaintiff, either before or at the time, to sell the property in dispute to the defendant, you must find for the defendant; and you may judge from the acts and words of the plaintiff or his agents, prior to the sale to defendant and at the same time, whether such authority was implied or not, or can be implied from the ratification by the plaintiff of the acts of Lyman T. High as his agent or otherwise; and if you find that there was such implied authority or such subsequent ratification, you must find for the defendant."

"7. If you find that the plaintiff or his agents permitted L. T. High to buy and sell the horses in dispute, and the horses and other property with which they were obtained, with the right to exercise ownership and control of the same, and by their acts and conduct ratified all the transactions of L. T. High from the 1st of April, 1869, up to the sale to defendant, then the plaintiff is estopped from denying the authority of L. T. High, and you must find for the defendant."

At six o'clock, P. M., the jury were instructed to retire, and when they had agreed on their verdict, to sign and seal the same and return with it at the opening of the court on the next morning; the respective parties each drawing a form of verdict, and submitting the same to the jury. At eight o'clock the next

morning, the jury having in the meanwhile separated, they brought into court sealed, and delivered to the judge, a verdict (which was the one submitted to them the night before by the plaintiff's attorney), by which they found that plaintiff was the owner of the property in question, and entitled to the possession thereof, and found also its value. While this verdict was being read, plaintiff's counsel suggested that it was not in proper form, and requested that a new form of verdict be submitted to the jury for their further deliberation. Thereupon the judge, against defendant's objection, submitted another form of verdict drawn by plaintiff's attorney, and directed the jury to retire and deliberate upon the same. The jury accordingly retired, and shortly after returned into court, and when asked if they had agreed upon their verdict, said that they agreed to adhere to the first verdict as they had returned it. The judge then charged the jury that if they intended to find no damages for the plaintiff, they should insert in the verdict a nominal sum. The jury were then sent out again, and shortly after returned into court with the second verdict as drawn by plaintiff's attorney, which was as follows, the blank therein as to damages not being filled: "[Venue and Title.] In this action the jury find for the plaintiff as follows: That the said plaintiff was the owner of the property described in the complaint herein, at the time of the commencement of this action, and still is such owner; that he was then and still is entitled to the possession of said property; that the value of said property is eight hundred and fifty-five dollars; that the defendant unlawfully detained the same as alleged in the complaint; and we assess the plaintiff's damages for such unlawful detention thereof by the defendant, at the sum of ———." The judge then read to the jury each separate finding of the said verdict, and the jury agreed and consented to each separately, but did not find or assess any amount of damages. The plaintiff's attorney thereupon waived all except nominal damages, and the court instructed the jury peremptorily to find nominal damages for the plaintiff to the amount of

six cents. The court then asked the jury if they assented to six cents damages, and they having answered affirmatively, that sum was inserted by the court to fill the blank in the verdict as above recited. The verdict was then recorded by the clerk, and read by him to the jury as recorded, and in response to the inquiry of the clerk, the jury assented to the verdict as recorded. Defendant's counsel then asked that the jury be polled; but the plaintiff objected, and the court refused, on the ground that it was too late.

Motion for a new trial denied; and judgment entered upon the verdict; from which defendant appealed.

*Hudd & Wigman*, for appellant, argued that it did not appear that the direction to the jury to seal their verdict and bring it into court the next morning, was given by consent of the parties, and that the giving thereof was error, for which the judgment should be reversed (18 Wis., 285; 2 Wend., 352); that it was error, also, to send the same jury out again with a new verdict; to instruct the jury orally, and not in writing, on the question of damages (ch. 101, Laws of 1868); to send out the jury the third time; to direct them peremptorily to find damages in any sum; and to refuse the polling of the jury. 7 Johns., 32; 3 id., 225; 3 Cow., 33; 2 Wend., 352; 22 Wis., 468; 6 id., 205; 21 id., 632. Counsel also contended that the court erred in giving the first, fifth and sixth instructions asked by plaintiff, and in refusing the second and seventh asked by defendant.

*Ellis, Hastings & Greene*, for respondent:

1. The first verdict was equivalent to a finding for the plaintiff on all the issues, but refusing to give any damages. In such cases nominal damages follow, especially when all other damages are waived. 1 Burr. Pr., 243; *Beekman v. Bemus*, 7 Cow., 29. And it is the duty of the court to put the verdict into proper form. *Sleight v. Henning*, 12 Mich., 377; *Everit v. Bank*, 13 Wis., 420; *Thompson v. Bulton*, 14 Johns., 84. Sending the jury out the second and third times was useless, but in no manner prejudicial to defendant. If the first verdict was in-

formal and insufficient, the last one was complete; and the court committed no error in sending the jury out to reconsider their verdict. 1 Burr. Pr., 238; *Blackley v. Sheldon*, 7 Johns., 33. And it makes no difference that the jury had separated after having agreed upon their first verdict. *Pritchard v. Hennessey*, 1 Gray, 294; *Douglass v. Tousey*, 2 Wend., 352–355. 2. The direction of the court to the jury to find on the question of damages was no part of the charge, within the meaning of ch. 101, Laws of 1868. *Millard v. Lyons*, 25 Wis., 516. 3. The right to demand a polling of the jury ceases when the verdict is recorded. *Root v. Sherwood*, 6 Johns., 68; *Blackley v. Sheldon*, 7 Johns., 33; *Fox v. Smith*, 3 Cow., 23; *Labar v. Koplin*, 4 Coms., 546–549; 1 Graham's Pr. 784; 1 Monell's Pr. 690; *State v. Austin*, 6 Wis. 205.

DIXON, C. J. We perceive no error in the first, fifth and sixth instructions given for the plaintiff, which are the only ones complained of in this court.

It is objected to the last clause of the first instruction, that the jury were informed, as matter of law, that the property in question became the property of the plaintiff. But the instruction was clearly hypothetical. It signified no more than that the property became the property of the plaintiff provided the jury found the facts as submitted to them in the first sentence of the same instruction. The facts from which the conclusion followed were fairly submitted to the decision and judgment of the jury ; and so we think they must have understood the instruction.

Neither is the language of the fifth instruction objectionable on the grounds stated by counsel for the defendant. The court did not direct the jury that they must find that the plaintiff *expressly* authorized the sale of the horses, and the instruction does not convey such meaning. It was open to the jury, upon this and all of the instructions, as we understand them, to find an implied authority to sell from the pre-

vious acts and conduct of the parties. Indeed, there was no proof of any express authority whatever, but the contrary; and the jury must, we think, have understood and applied this instruction to an implied authority to sell, as the court, beyond doubt, intended. And as to a ratification of the sale by the plaintiff after it was made to the defendant, which it is said the instruction withdrew from the consideration of the jury, we find no evidence in the case to that effect which could have been considered by the jury.

The sixth instruction is said to have been erroneous, because the court gave certain language as being in testimony by the plaintiff, when there was no such testimony. The court said: " The plaintiff testified on his cross-examination, that Lyman T. High sold horses from his, the plaintiff's, barn without authority so to do. He also testified that Lyman T. High was permitted to sell and exchange horses which belonged to the plaintiff." Both these statements were fully justified by the testimony given by the plaintiff on cross-examination. After testifying that Lyman T. " took horses out frequently; frequently changed horses," etc., but " never took property in the way he did this time," he further stated in evidence, respecting the sale in question, that Lyman T. " had the same right this time as before, *no right at all.*" And again he testified, speaking of the horses in suit: " I forbid Lyman taking the horses out of the barn."

To the refusals of the court to give the second and seventh proposed instructions asked by the defendant, exceptions were taken, and those exceptions are also urged. Both requests were properly refused, for the reason that they ignore entirely propositions of fact which were not without some support in the evidence, namely, that the plaintiff had revoked the authority of Lyman T. to sell before the sale was made, and that the defendant knew of such revocation at the time of his alleged purchase. They likewise omitted another most important qualification required by the evidence, which was, that the purchase by the defendant must be found to have been *bona fide* and ac-

tual. There was testimony which tended to show that it was merely colorable and collusive. If the jury had found all these propositions of fact against the defendant, still, under the request to charge, if granted, it would have been their duty to return a verdict in his favor, if only they had found express or implied authority from the plaintiff to Lyman T., at any time *before* the sale, to sell the property in dispute. The language of the second request was, " either before or at the time," etc. And the seventh request was in substance the same. It referred to past time, and permission by the plaintiff Lyman T. to buy and sell before and up to the time of sale to the defendant, but not at that time. All the facts proposed to be submitted to the jury by that request, and upon the finding of which they were required to return a verdict for the defendant, were consistent with the facts (if the jury had so found, as they might upon the evidence) that the authority of the agent was revoked immediately before the sale, and that the defendant had notice thereof. They were consistent with the fact (which might also have been found by the jury) that the sale to the defendant was merely colorable and collusive.

The remaining points taken by counsel we regard as untenable. Without considering whether the court may, against the objection of either party, direct the jury to sign and seal their verdict and return it into court on the following day, it is clear, if neither party do so object, that the practice is proper. In the absence of objection, the parties are deemed to have tacitly assented to it, and cannot afterwards question the verdict on that ground. This was so held in *Douglas v. Tousey*, 2 Wend., 352. The record here not only shows that no objection was taken, but that the defendant, as well as the plaintiff, prepared a form of verdict in his favor, and submitted it to the jury to be signed and sealed by them in case they should so find, and returned into court on the next day. This was something more than a tacit or implied waiver of objection on the part of the defendant. It was a clear and positive assent.

And the authority of the court, on the re-assembling of the jury and the delivery and opening of the verdict next morning, to send them out again, is clearly sustained by the case above referred to, and others there cited. And so it was held in *Pritchard v. Hennessey*, 1 Gray, 294. The jury were twice directed to retire; first, to put their verdict in more proper form, and secondly, to consider what damages, if any, the plaintiff should recover for the detention of the property. We see no objection to this practice, even upon the receiving of a sealed verdict. It is very common in our courts, both upon verdicts of that kind and others.

Nor was it the error in the court to give the brief verbal instruction respecting the insertion of a nominal sum for damages in the verdict. This was no part of the charge of the court, within the meaning of the law (ch. 101, Laws of 1868), but a direction, after verdict found disposing of all the material issues, as to what should be the form of it.

Neither was it error for the court, after the jury had refused to find the amount of damages, or any damages, in favor of the plaintiff, peremptorily to direct them to find a nominal sum of six cents. It seems to have been considered necessary that there should be some finding or assessment of damages, either actual or nominal, in order to sustain the verdict and judgment. We are of a different opinion; but, however that may be, the peremptory order in a case of this kind to find *six cents*, even though wrong, is not an error for which the law cares, or which the courts will pause to consider.

The defendant asked that the jury be polled. This was after the verdict was received and recorded. It was then too late to make the request. This conclusion clearly follows from the decision in *Farrell v. Hennessy*, 21 Wis., 632, where it was held to be a waiver of irregularity in the rendition of the verdict, that objection was not taken before the verdict was pronounced and recorded. It was irregular there to receive and record the verdict; yet the defect was waived by the omission to object. Here

the verdict was regularly received and recorded; and for much stronger reason must we hold that it was thereafter too late for the defendant to open the controversy, and insist upon polling the jury. There is a time for all things, and the time for polling the jury is before their verdict is pronounced and recorded by the court.

*By the Court.* — Judgment affirmed.