ELBRIDGE CLARK *v.* FIRST CONGREGATIONAL SOCIETY IN KEENE.

In the case of issues awarded in equity, and a motion for a new trial upon the ground that the verdict is against evidence, the court will ordinarily be governed by the rules and principles applied to such motions in suits at law, and will not grant a new trial merely because on weighing the evidence the court would have reached a different result.

THIS is a bill in equity brought to set aside a conveyance of plaintiff's interest in the meeting-house lot of the defendant in Keene, together with certain strips of land in addition thereto. · The relief is sought upon the ground that two of those strips of land were included in the deed by fraud, accident or mistake, and also upon the ground that the deed was never delivered.

After answer filed and proofs taken, issues were awarded on the application of the plaintiff; and those issues were, (1) whether the deed was delivered; (2) whether a strip of land on the east of the meeting-house lot was included in the deed by fraud, accident or mistake; and (3) whether a strip lying northerly of said lot was so included by fraud, accident or mistake.

On the trial of these issues at April Term 1863, the jury found for the plaintiff on the second issue, that the strip on the east of said lot was included in the deed by fraud, accident or mistake, and found for the defendant on the other two issues; finding that the deed was delivered, and that the strip northerly of said lot was not included by fraud, accident or mistake.

Thereupon the defendant moved for a new trial upon the second issue, upon the ground, among others, that the verdict as to that issue was against evidence; and this exception in fact includes substantially all the others.

The evidence adduced at the trial was reported and has been examined, but it is not necessary to state it now as the question of law sufficiently appears without.

*Cushing*, for defendant.

1. The clause in the Constitution of New Hampshire, (Bill of Rights, Article 20,) being for the protection of parties, may be waived.

2. The plaintiff, by filing his bill in chancery, submits himself to the rules and principles of chancery practice, and waives his right to in-

sist upon a trial of the facts alleged by jury. *Marston* v. *Brackett*, 9 N. H. 337.

3. The issues in this case must have been in accordance with the ordinary practice in chancery, directed by the court for the "better information of its conscience." *Tappan* v. *Evans*, 11 N. H. 311; *Gomperts* v. *Ansdell*, 4 Myl. & C. 449.

4. The aid of a jury trial being sought by the court, in the exercise of its discretion for the better information of its conscience, the court keeps in its control the whole matter, makes such orders as it deems to be expedient in regard to the admission of testimony, and the conduct of the trial generally, and may disregard verdicts and order new trials, until its conscience is sufficiently informed; and may even, if the information derived from the jury trials, taken in connection with evidence taken for the case, point to such a result, disregard all the verdicts, and proceed to a decree independently of them. *Exparte Christie*, 2 Dea. & Ch. 461, (3 Chit. Dig. 2325;) *Tatham* v. *Wright*, 2 Russ. & M. 1; *Barker* v. *Ray*, 2 Russell, 63; *Head* v. *Head*, 1 Turner & Russell, 138; S. C. 1 Si. & Stu. 150; *Carrington* v. *Jones*, 2 Simons & Stuart, 135; *Pemberton* v. *Pemberton*, 13 Vesey, 290; Ambler 210, 3 Chit. Dig. 2227.

5. From these principles it necessarily follows that the motion to set aside the verdict, and for a new trial, must be made in the court by which the issues are directed. By the English practice, as we understand it, the Equity Judge on motion and cause shown, sends to the Common Law Judge for his notes of the trial, and in this way the case gets before the Equity Court. As with us it is the same court sitting as Common Law Court and Chancery Court, it is not perhaps very material how the proceedings in the jury trial get before it. But the motions must be heard and determined as if the courts were separate and the issues being directed by the court sitting in chancery, this question regarding the effect to be given to the verdict must be heard and considered also by the court sitting in chancery. *Lewis* v. *Armstrong*, 3 Myl. & K. 45; *Humphreys* v. *Pensam*, 1 Myl. & C. 581; *Gregg* v. *Taylor*, 5 Russ. 19; *Apthorp* v. *Comstock*, 2 Paige 92; *Carstairs* v. *Stein*, 2 Rose 178; (3 Chit. Dig. 2327); *Bootle* v. *Blundell*, 19 Vesey, 494; *Exparte Kensington*, Coop. 96, (3 Chit. Dig. 2327.)

6. We say that on these principles it will be made apparent, by comparing the evidence taken for the case with the evidence at the jury trial as reported by the Judge, and also with the plaintiff's allegations in his bill, that, (1) the two verdicts are inconsistent, and cannot be both founded on the evidence; (2,) the verdict which we have moved to set aside is contrary to the evidence and could not have been found unless the jury had been laboring under some misapprehension of the evidence, or of their duty in relation to it.

7. The court ought to disregard that verdict, and render such decree for the defendants as would have been rendered if that issue had been found for them.

*Lane,* for plaintiff.

1.  Either party has a constitutional right to a trial by jury of any material fact arising on a bill in equity.  Bill of Rights, Art. 20; *Marston* v. *Brackett,* 9 N. H. 336; *Dodge* v. *Griswold,* 12 N. H. 573.

2.  The motion in this case was made and argued in 1860, before any evidence was taken.  And if it had not been, the right to such trial has already been granted and exercised, so that the constitutional right to it by the plaintiff is not properly raised in this stage of the case.  The motion was granted, undoubtedly either as a constitutional right, or as a proper and necessary means of trying facts in issue, according to the provisions of sec. 8, ch. 171, R. S.

3.  Had the verdict in this case been rendered on issues arising in a suit at common law, there could be no pretence for asking to have it set aside on the main issue in the case, for any of the reasons assigned by the defendant.  *Wendell* v. *Safford,* 12 N. H. 171; *Lisbon* v. *Bath,* 21 N. H. 335; Id. 23 N. H. 10; *Gould* v. *White,* 26 N. H. 178; *Palmer* v. *Portsmouth,* 43 N. H. 265.  Nor would it be set aside in part only and not in whole.  *Knowles* v. *Dow,* 22 N. H. 387.

4.  The force, effect, and character of verdicts rendered in proceedings at common law, are the result of the soundest reason, and necessarily follow from institutions which recognize trials by jury as a substantial part of the judicial system, and not an useless appendage of courts; and in all cases whatever, when the intervention of a jury is sought to determine facts in controversy, the same force, effect, and character should be given to the verdict.  And when facts are once found by the verdict of a jury it would be unconstitutional for courts to disregard such finding, or treat it otherwise than if rendered in common law proceedings.  Const. U. S. Amendments, Art. 7; *Parsons* v. *Bedford,* 3 Peters, 433; 3 Greenl. Ev. sec. 263.

5.  The court erred in not permitting the plaintiff to prove his notice rescinding the agreement, because, as we contend, Gerould alone, or with others, was not authorized by the defendants to purchase any lands for them, (see Cook's 2d deposition containing copies of the records referred to,) and the purchase not then having been ratified or accepted by the defendants, the plaintiff might rescind or revoke it on his part.  A rescision is effective if made before a transaction, which is entered into with an assumed agent having in fact no authority, is ratified by the principal.  1 Parsons' Cont. 4th Ed., 44 n. tt. & cases, 478.

6.  An acceptance, after such notice, could be only an acceptance by the principal, of the contract as limited and qualified by the notice of the plaintiff.  1 Parsons' Cont. 4th Ed. 373, 399, 407.

BELLOWS, J.  Upon a careful consideration of the evidence reported, we think that a case is not made for setting aside the verdict on the second issue as against evidence, unless a different rule applies here from that which is recognized in suits at common law.  There a verdict is not to be disturbed merely because the court on the evidence would have decided differently; but where presumptions are to be raised, inferences drawn, and conflicting evidence to be weighed, including the credibility

and intelligence of witnesses, the verdict will not be set aside, unless it is so decidedly against the weight of evidence as to make it apparent that the jury must have been misled, or have failed to consider intelligently the evidence laid before them, or the instructions given by the court. Indeed, to authorize such an interference with the proper duties of the jury, the evidence of mistake or misconduct ought to be of a very cogent nature, and such as to satisfy the court fully that the verdict was such as twelve honest and intelligent men could not have returned. *Wendell* v. *Safford,* 12 N. H. 171; *Lisbon* v. *Bath,* 21 N. H. 319; *Gould* v. *White,* 26 N. H. 178. This power, in truth, is and should be very sparingly exercised by courts of law, because, not only is the jury the proper and lawful tribunal to determine questions of fact, but cases will rarely come to them so clear as to admit of no serious question. With these principles in view, we think, that, regarding the verdict as standing upon the ordinary footing of a verdict at law, there is no cause to disturb it.

The testimony before the jury was conflicting; they saw and heard the witnesses, and were the proper judges of their fairness, intelligence and goodness of memory; they viewed the land and had testimony of its value, and were in condition to make inferences as to the probabilities of such a sale as is set up on the one side and the other. They had before them the deeds that were made, and were prepared to consider their bearing as evidence upon the question of mistake, accident, or fraud; and, although the direct testimony of the plaintiff himself is contradicted on all the material points by three or more witnesses on the part of the defendant, yet we are unable to say, in view of the whole evidence adduced, that an honest and intelligent jury could not have found, that, in respect to the strip of land east of the meeting-house lot, the plaintiff was right.

Whatever, then, might be our conclusions on the evidence reported, we are clear that there are no such controlling and weighty reasons against the finding of the jury on the second issue, as in a court of law would justify us, in the exercise of a sound judicial discretion, to disturb their verdict.

It remains, therefore, for us to enquire whether, as these issues were awarded in a suit in equity, the motion for a new trial is to be governed by different rules. In discussing this question at the bar, it was supposed to be material to determine whether the issues were awarded as a matter of right under the constitution, or as a matter of discretion under general equity process, in the absence of any such right. But we are inclined to think, that, whatever view may be taken in this respect, there is no substantial difference in the rules which ought to guide the decision of such a motion. It is true, that there are numerous English authorities to the effect, that issues are sent to a law court for trial merely to inform the conscience of the Chancellor, and that, if the finding is not satisfactory to him, he may direct another trial, or may even wholly disregard the verdict; and in some cases it is even held, that he will grant a new trial, not only when the verdict is against evidence, but he will nicely balance the evidence on both sides, and, when he finds that the

verdict is contrary to the *weight of evidence*, he will direct the issue to be tried over again.    2 Daniell, Ch. Pr. 1307, and cases cited.

But it will be observed that this power of directing a new trial is most freely exercised in the cases where the party is entitled to issues as matter of right; namely, in suits to establish a will of real estate against the heir; in which case the heir is entitled to issues as of right, and, out of regard to the inheritance which, in the English courts, is greatly respected, and peculiarly guarded by the policy of the law, the Chancellor will not feel himself bound by one verdict against the inheritance, if any objection arises at the trial    *Stace* v. *Mabbot*, 2 Ves. Sen. 552; *Tatham* v. *Wright*, 2 Russ. & Mylne, 1; *Pemberton* v. *Pemberton*, 13 Ves. 290; 2 Daniell Ch. Pr. 1287.

So, in the case of a rector or vicar, where, in a suit involving the right to tithes, the fact of a *modus* is drawn in question, the rector is entitled as of right to have issues awarded, 62 Daniell Ch. Pr. 1287, and cases cited,) and yet it does not appear that the power to direct a new trial is affected by the fact that issues are directed as matter of right.    Again, by the English practice, a court of equity sometimes directs a suit at law to be brought in order to obtain the verdict of a jury, instead of awarding issues; and in such case any application for a new trial is to be determined by the court of law in which the suit is brought; and it is said, that, in deciding whether to direct such suit, or to send down issues, the court consider whether the case is such as ought to be governed by the result of a trial in a court of law. 2 Daniell Ch Pr. 1306, and cases cited.    If, then, a suit at law be directed, the motion for a new trial will be governed by the rules which are recognized by courts of law, and the finding in such suit will, as it would seem, be regarded as conclusive in respect to its subject matter.

On the other hand, it has been laid down as a rule, that a new trial will be directed when, for any material or weighty reason, the verdict is not satisfactory to the Chancellor: *Stace* v. *Mabbot*, 2 Ves. Sen. 552, per. Ld. Ch. Hardwicke, who held that the issues were to inform the conscience of the court as to facts doubtful before, and therefore the court expects such a verdict as shall satisfy its conscience to found a decree upon; and he holds that a new trial would be ordered in a court of equity, where it would not be in a court of law.    It is clear from the opinion of the Chancellor in this case, that it was not understood by him, that a new trial would be ordered merely because the Chancellor, on weighing the evidence, would have reached a different result.    Indeed, if it were so, it would be of little avail to send down issues at all, inasmuch as the Chancellor would be called upon still to examine and weigh the evidence, and form an opinion upon it, as if the issues had not been tried.

Where the sending of issues is merely a matter of discretion to inform the conscience of the Chancellor, if there was no conflicting evidence, or if a jury could find only one way, or if, under the circumstances, the court felt itself more competent to find the facts than a jury could be, issues would not, ordinarily, be awarded at all; and, therefore, it may fairly be assumed that if issues are sent to a law court for

trial the state of the proofs is such, that, ordinarily, the court would be satisfied with the verdict whichever way it might be found. And so it is expressly laid down by Chief Justice Marshall in *Harding* v. *Handy*, 11 Wheat. 125. In *Townsend* v. *Graves*, 3 Paige Ch. Rep. 453, it is laid down, that "issues should be directed only in those cases where there is a want of evidence, or the testimony is contradictory and so nearly balanced that it is necessary to have an open and rigid cross-examination of the witnesses before the jury who are to decide the question of fact upon their conflicting testimony." So, in *Samuel* v. *Marshall*, 3 Leigh, 567, it is held, that, though the evidence be conflicting yet, if it be such as ought to convince the conscience of the Chancellor, an issue ought not to be directed. In *Carter* v. *Campbell*, Gilmer 159, it is held, that, in a proper case for an issue, the verdict is conclusive where the evidence is conflicting.

Upon a consideration of these authorities and the principles upon which they proceed, it is manifest that the doctrine of directing a new trial when the Chancellor is of the opinion that the verdict is against the weight of evidence upon nicely balancing it, cannot be sustained without much qualification. It is often said, to be sure, that the Chancellor may order new trials until his conscience is satisfied; but it may well be assumed that his conscience *is* satisfied in the judicial sense of that term, when, in a case where issues are properly awarded, a jury of twelve honest and intelligent men have returned their verdict, and there are no weighty or controlling reasons to believe that they were misled. The issues are awarded for the reason, that the aid of a jury is desired by the Chancellor because of the superior fitness of that tribunal, with a *viva voce* examination of the witnesses, to determine a controverted question of fact; and if the trial is fairly conducted, and there are no cogent reasons to suppose the verdict to be the result of prejudice or mistake, the conscience of the Chancellor, in ordinary cases, ought to be satisfied.

In the earlier stages of the English courts of equity, the discretion of the Chancellor was guided less by rules than it has been in later years, and that is apparent in the authorities upon the subject before us. In this country, and especially in New England, where courts of chancery have been, until a comparatively recent period, regarded with jealousy, and where the trial by jury has been looked upon as sacred, the power to disregard the verdict of the jury because the Chancellor would have decided differently, might well be considered as not in accordance with the spirit of our institutions or the course of our courts. The jurisdiction of courts of equity is extensive, and we see nothing in the constitution of those courts, or in their modes of proceeding that should prescribe rules to govern the granting of new trials substantially different from those which exist in courts of law. In both courts, the aid of a jury is sought, because it is supposed to be best fitted to decide upon controverted questions of fact, and no reason is perceived for regarding the trial by jury as less sacred in one court than the other. In both courts, the rights of property are determined by the verdict, and the forms of proceeding can, as we conceive, make no difference as to its substantial effect and

value.   With us the motion for a new trial is decided by the same judges, whether the suit be in equity or at law, and in both cases the question is, and ought to be, whether there has been a fair and impartial trial, and if so, the facts found by the verdict should in general be regarded by the Chancellor as established.

There may be cases where courts of equity would order a new trial, when courts of law would not; but where the application is based upon the position, that the verdict is against evidence, we can see no solid reason for establishing different rules to guide the discretion of the court, or for holding that the power of the court over the verdict is greater in suits in equity than at law.    The difference between the two courts is to a very great extent merely formal, and, upon a great many subjects, they have concurrent jurisdiction ; and it is obvious, that, in most cases the verdict is entitled to the same weight in one court as the other, so far, at least, as establishing the fact in issue is concerned.    The views of the English courts, so far as they tend to a different doctrine, have been greatly influenced by the policy of their law to discourage the alienation of inheritances and the consequent granting of repeated trials where the verdict was against the heir ; but no such policy exists with us and we can perceive no good reason for arming the Chancellor with a power so repugnant to the spirit of our institutions.

In *Clive* v. *Gascoigne*, 1 Amb. 323, when, in a suit growing out of a life insurance policy, there was a question as to a representation by Sir Crisp Gascoigne, that a certain life was a good one, which had afterwards dropped, Lord Hardwicke held that the instructions of the Judge who tried the issues, were erroneous, and that it was impossible to say upon what the jury founded their verdict in that case.    But says his Lordship : " I go further.   This court has frequently granted new trials merely because the inheritance was bound by it.   It is true, so much regard is not paid to personal property ; but in this case a gentleman's character is at stake" ; and a new trial was directed.    Since this time some change has taken place in this practice in equity courts upon this subject even in England.    In *O'Connor* v. *Cook*, 8 Ves. 536, Lord Eldon says, it belongs to the constitution of a court of equity to decide upon matters of fact if they think proper.    But they have, for a great number of years, when questions of fact have been disputed, thought it a more proper exercise of their jurisdiction to have them determined by a jury.    At the same time, when administering the equitable relief afterwards, their own judgment ought to concur with the verdict to this extent, at least, that they are not dissatisfied with the verdict.    They ought to be satisfied that the questions upon the facts have been fully and distinctly before the jury.    The ground upon which I grant the new trial is not, that the verdict in not satisfactory upon the facts—for I desire it to be understood that I form no conclusion upon the facts—but I am of the opinion the points in the case have not been distinctly before the jury.    In the same case reported, 6 Ves. 671, the same Chancellor says that it is pretty clear that courts of equity in ancient times were more in the habit of taking to themselves the decision of questions of fact than they have thought wise and discreet in later times.    And he

says further that all the Judges have shown themselves in favor of sending questions of fact to the jury when a reasonable doubt is raised ; and he says, he cannot suppose there is any prejudice (this being a question of a *modus*,) in a tribunal appointed according to the constitution of the country to try the fact. These views of Lord Eldon are far from the doctrine, that a new trial will be ordered because the Chancellor on nicely balancing the evidence finds the preponderance to be contrary to the verdict.

If such a doctrine *were* to be carried out in practice, it is obvious that it would be attended with such burthens arising from repeated and expensive trials and consequent delays, that no system which tolerated them· could long retain any hold upon the public confidence. Indeed, such a practice would be wholly inconsistent with that regard for the trial by jury which is manifested in all or nearly all of the American State constitutions, showing the greatest solicitude for its preservation as a sacred right, and intimately connected with the general welfare.

By our Revised Statutes, ch. 171, sec. 8, it is provided that no jurors shall attend the Superior Court, but, if it shall be necessary in any case to ascertain any facts by a jury, an issue shall be made up under the direction of the court and transmitted to the court of Common Pleas for trial, and the verdict of the jury thereon shall be certified to said Superior Court, and judgment rendered thereon as the case may require.

This is substantially like the law of Dec. 1832, which provides that such matters of fact being so ascertained, such judgments may be rendered thereon in the Superior Court as the case may require. These provisions apply to matters in equity as well as at law, and the. verdicts in both are put upon the same footing, at least no distinction is made or contemplated ; and in view of the anxiety of the framers of our constitution that the trial by jury should be held sacred, we may fairly consider that it was the purpose in these provisions of our statutes to put upon the same footing, substantially, all verdicts so rendered, whether in suits at law or equity. See 3 Greenl. Evi. sec. 266.

Without considering, then, whether there be a constitutional right to a trial by jury in suits in equity, we are of the opinion that ordinarily the rules which govern the court on applications to set aside verdicts at law as against evidence, should also, substantially, be applied in suits in equity ; and, therefore, the motion for

<div align="right">

*A new trial is denied.*